SPECTOR, Judge.
Appellant seeks review of an order denying his motion to vacate his judgment of conviction and twenty-year sentence imposed thereon on charges of robbery on the ground that the prosecution suppressed evi *447 dence favorable to the accused and that he was subjected to a tainted lineup. His conviction has heretofore been affirmed by this court on direct appeal. See 223 So.2d 756.
Point one states a generally accepted rule of law under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. For application of the rule however, it must be. shown that the allegedly tainted lineup identification was revealed to the jury. In the case at bar, no mention of the lineup identification was made to the jury as indicated by the transcript of the proceedings at trial contained in the record in appellant’s direct appeal of his conviction to this court. That record makes it clear that proof of identity at trial was made by the robbery victim by way of photograph identification made before the lineup and by courtroom identification as well. The purpose of the rule in Wade and Gilbert is to prohibit the use of the fruit of an illegal lineup. Here, the fruit was not presented to the jury. An analogous situation is where a statement is taken from a suspect during custodial interrogation without compliance with the Miranda warning requirements, but at trial the tainted statement is not used at all. In such event, as in the case at bar, there would be no basis for complaint since the complained of item was not used against the defendant.
The remaining point stems from appellant’s contention that he was denied due process at his trial because allegedly the state knowingly and wilfully suppressed evidence averred to be favorable to the accused.
At the trial, the appellant was identified by the robbery victim as one of the three participants in the crime. Appellant produced one eyewitness at the trial. Miriam Williams testified that she lived with her mother-in-law, Armetter Fountain, across the street from the scene of the robbery. While in back of the house, she heard Mrs. Fountain scream and call her to the. front. Mrs. Williams stated that when she arrived at the front porch she saw one man, who was not the 'defendant, pointing a gun at the victim and two other men, whom she could not identify because their backs were toward her, running away through a field. Mrs. Williams testified that the appellant was not one of the two running away based on her comparison of his size with that of the two runners. The mother-in-law, Mrs. Fountain, was not called as a witness although her name was listed on the back of the information along with that of Mrs. Williams.
Appellant alleged in his motion that Mrs. Fountain had witnessed the entire robbery and that unlike Miriam Williams, she had seen all three of the participants in the robbery and could testify that he was not one of them. Appellant argues that Mrs. Fountain’s exonerating identification was made known to the committing magistrate and the policemen present at the preliminary hearing which she attended pursuant to a subpoena, but the magistrate bound appellant over ndtietheless based on the victim’s identification evidence. It is the failure of the police or the magistrate to disclose to appellant the exculpatory evidence possessed by Mrs. Fountain that appellant contends amounts to a suppression of favorable evidence within the meaning of the holding in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In Brady, the court stated, at page 87, at page 1196 of 83 S.Ct.:
“We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”
Inquiry into the transcript of trial testimony which we have in our files of appellant’s direct appeal in which his conviction was affirmed indicates that during the course of the trial several references were made to the missing witness, Mrs. Fountain.
*448 First, the robbery victim, Mr. Arbuckle, when asked whether there were any persons nearby when the robbery occurred stated “ * * * there was another customer across the street down one house who screamed when she saw what was going on * * Later Mr. Arbuckle again testified “ * * * there was a lady who was on a porch who is now in a hospital, I understand. I learned that today. This would be across the street and one house down. * * * She saw what happened but I don’t know whether she could identify it or not * * * I could not see her. She was behind the screen of the porch.” When the victim so testified at the beginning of the trial, the defendant and his attorney were put on notice that there was a potential eyewitness. Indeed, on the information filed in this case there appeared the names of both Mrs. Williams and Mrs. Fountain.
Later on in the trial when the defense was putting on its witnesses, Mrs. Williams testified that her mother-in-law (Mrs. Fountain, the person whose scream had earlier brought Mrs. Williams from the back to the front of the house where she could see the robbers as they ran away) was in a hospital in Tampa. That testimony by one defense witness and that of the victim negates any contention that the defense did not know there was another witness nor her whereabouts at the time of the trial. Obviously the defense counsel was aware of the fact that there were eyewitnesses to the robbery. This knowledge came to him during the trial at the very latest when the above recited testimony was given, but it probably came to him earlier when and if he interviewed Mrs. Williams as to her knowledge of the facts prior to calling her as a defense witness.
When viewed in light of the above circumstances, it seems to us that appellant can hardly be heard to complain that the prosecution suppressed evidence favorable to his defense since he knew or should have known about Mrs. Fountain’s existence as a witness and had a lawful right to take her deposition for the purpose of using the same at the trial under the provisions of Rule 1.190(e), Florida Rules of Criminal Procedure, 33 F.S.A. Even if the witness that he did use, Mrs. Williams, had failed earlier to tell defense counsel that her mother-in-law had seen the robbery and could therefore give testimony favorable to the defense, that fact came to light early during the trial. In these circumstances, there is no showing that the prosecution suppressed evidence favorable to the defense.
In State v. Morse, 241 A.2d 328 (Vt. 1968), the defendant raised the question of suppression of evidence on appeal because the state had failed to call a witness who was present during an affray underlying the assault charges. The appellate court rejected the contention, observing at page 330:
“At the close of the state’s evidence, when it became known that the prosecution was not calling Peacock as a witness, the respondent remained silent. He made no request either for the production of the witness or for an explanation as to why he was not present. * * * If it was respondent’s election to take advantage of Peacock’s absence as a witness in his argument to the jury, his failure to raise the issue earlier may have had that as a basis. This election cannot now be turned into reversible trial error. The witness was as amenable to the respondent as well as the state.”
In the case at bar, the witness, Mrs. Fountain, was equally amenable to the defendant. Her name was listed on the information; her presence as an eyewitness was testified to by the victim as well as a defense witness. On the state of the trial record, it could hardly be said that the defendant did not know that Mrs. Fountain was an eyewitness nor that defendant had no opportunity to ascertain and utilize the evidence which Mrs. Fountain could have contributed in his defense. The rule in Brady, supra, does not operate when the defendant or his counsel knew of the exculpatory evidence either before or during *449 trial. We hold therefore that there was no suppression of favorable evidence within the meaning of the Brady rule. A like holding is found in Gordan v. United States, 271 F.Supp. 950 (1967), where the court ruled that since the defense attorney learned of the existence of the eyewitness during the first minutes of testimony on the first day of trial but made no effort to ask the court for a recess or a continuance, there was not such suppression of the eyewitness as required granting the defendant postconviction relief.
Accordingly, the order appealed is affirmed.
WIGGINTON, Acting C. J., and CARROLL, DONALD K., J., concur.