No. 46,861

THE STATE OF KANSAS, *Appellee,* v. JIMMY W. SULLIVAN a/k/a
JAMES W. SULLIVAN a/k/a JAMES SULLIVAN and JOE C. SMITH
a/k/a JOE CLARENCE SMITH, *Appellants.*

(504 P. 2d 190)

Opinion filed December 9, 1972.

G. *Edmond Hayes,* of Wichita, argued the cause and was on the brief for the appellants.

*David P. Calvert,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* county attorney, *Reese Jones,* deputy county attorney, and *William C. Kitch,* county attorney legal intern, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: Jimmy W. Sullivan and Joe C. Smith, who are the appellants in this case, were tried jointly, along with their co-defendant Chester Irving, on three criminal charges: (1) Felony possession of a shotgun with barrel less than eighteen inches in length, the defendants Smith and Irving having been convicted of felonies within 5 years prior thereto and the defendant Sullivan having been released from imprisonment for felony within the preceding five years, all in violation of the provisions of K. S. A. 1971 Supp. 21-4201 and 21-4202. (2) Felony possession of firearms (being a revolver and a pistol) with barrels less than twelve inches long, Smith and Irving having felony convictions within the preceding five years, with Sullivan having been released from felony imprisonment less than five years before. This charge is alleged to be in violation of K. S. A. 1971 Supp. 21-4204. (3) Conspiracy to commit the crime of robbery in violation of the provisions of K. S. A. 1971 Supp. 21-3302. All three defendants were convicted on the two weapons charges and were acquitted on the count of conspiracy. Sullivan and Smith alone have appealed. They will be referred to herein either by name or as appellants.

Very briefly the background facts are as follows: Acting on a tip that a gambling game at 3213 Locust Street would be held up, officers from the Wichita police department and the Sedgwick

County sheriff's office staked out the house. Around 11:30 p. m. a Cadillac car circled the block and parked about a block away; three men emerged therefrom and walked around the house looking in the windows, after which they returned to the car, entered it and started to pull away; at this juncture the officers revved up their vehicles and attempted to stop the Cadillac as it entered the nearby intersection; the Cadillac, deigning not to be stopped, continued on its path for some two blocks with the officers in hot pursuit, one of their cars running parallel to the Cadillac on the driver's side. During the chase, two pistols, a sawed-off shotgun, a towel and a pillow case made into a mask were thrown from the passenger's side of the Cadillac. When the car was stopped, lo and behold, the three defendants emerged, Sullivan from the driver's seat, Smith from the right front seat and Irving from the rear seat. Two .12 gauge shotgun shells were found in Smith's pockets and two masks were found in the back seat.

A number of errors are alleged. Those which merit attention will be considered in order.

First it is contended the trial court erred in denying a motion for separate trials and in ordering that all three defendants be tried jointly. The backgound of this complaint must be sketched. On May 12, 1971, Sullivan and Smith, through their counsel, G. Edmond Hayes, a Wichita attorney, moved for separate trials at the time of their arraignment. The Honorable Tom C. Raum granted their motion. On the date this action was taken the applicable statute was K. S. A. 1970 Supp. 22-3204 which required the court to grant separate trials upon request, when two or more defendants were jointly charged with a felony. However, the 1971 session of the Kansas legislature amended 22-3204 by providing that the granting of separate trials should be optional with the trial court, and the amendment became effective July 1, 1971. Soon after the amended statute took effect, the case not having yet been tried, the state moved that the prior order granting separate trials be set aside and that the defendants be tried jointly. Over strong objections, the state's motion was sustained by the Honorable Howard C. Kline, administrative judge, and the three defendants were ordered to be tried jointly. Nine days later the case went to trial, after new motions for separate trials were overruled by Judge Raum.

Under the confronting circumstances we believe error was committed in denying the appellants' motions for separate trials. From

the beginning, Smith and Sullivan had been represented by the same attorney, Mr. Hayes, who had reason to anticipate, at least as far back as May 12, that his clients would be tried separately, as the trial court had first ordained. Mr. Hayes had expressed the belief that he would be able to represent both clients at *separate* trials without jeopardizing or prejudicing the interests of either.

When, in July, the state filed its motion to consolidate the cases for trial, contrary to Judge Raum's prior order, the appellants' counsel, apparently for the first time, sensed danger to his clients' interests. Upon oral argument of the state's motion to consolidate, Mr. Hayes advised the court it would be impossible for him, in a joint trial, to defend one of his two clients without prejudicing the other; that the serious question in this case was that of knowledge on the part of the defendants of the presence of the guns in the car and their intent, or lack thereof, to possess or control the weapons; and that the defense in both cases was different.

We are informed in the appellants' brief that the evidence of each appellant tended to exonerate himself and incriminate the other. This state of affairs might have well been anticipated by the trial court from the objections interposed by Mr. Hayes and the arguments presented to the court in support thereof. We learn from the brief there was a dispute as to how the weapons came to be in the car, who brought or placed them there, and under what circumstances; what knowledge each occupant of the car possessed and who exercised control over the guns. In this state of affairs a single attorney representing both Sullivan and Smith would find himself in an intolerable position; he could hardly be expected to place either client on the stand to testify on his own behalf, and then subject him to cross-examination on behalf of the other. Faced with this dilemma, counsel offered the testimony of neither appellant. Thus each appellant, for all practical purposes, was deprived of the opportunity of testifying in his own defense, a right which he possessed no matter how unlikely his story might be.

Conflict of interest is a sensitive area in the law. It is recognized as such by the legal profession and it has been codified in Canon 5, DR-105, Code of Professional Responsibility, 205 Kan. lxxxv-lxxxvi. See, also, Ethical Considerations, 5-14, 15, 16, 17 and 18, ABA Final Draft, Code of Professional Responsibility, pp. 60-61.

This court has not been silent on the subject. In *State v. Leigh,* 178 Kan. 549, 289 P. 2d 774, we spoke in these words:

". . . The inviolate rule has long been firmly established both in the Canons of Professional Ethics and by judicial opinions that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. . . ." (p. 552.)

In a somewhat different context we dealt with the problem in *State v. Young*, 196 Kan. 63, 410 P. 2d 256, where the trial court had appointed a single attorney to represent two indigent defendants who had been charged jointly with robbery, and who were later tried together. Before trial one of the defendants requested separate counsel on the ground that his interests conflicted with those of his codefendant. The request was denied. In reversing the conviction which resulted, this court concluded that a possible conflict of interest existed which the trial court should have anticipated. The gist of our decision was framed in these words:

"The right of a person charged with crime to counsel under Section 10 of the Kansas Bill of Rights and K. S. A. 62-1304 is infringed where counsel appointed over the objection of accused was acting as counsel for codefendant[s] where a conflict of interests between defendants appeared to be a possibility." (Syl. ¶ 1.)

Although counsel for the appellants may not have been as specific in apprising the trial court as to how his clients' interests would be jeopardized as he was when he prepared his brief, we believe the court was sufficiently informed to have detected a conflict serious enough to require separate trials. We cannot say that the court's failure in this respect was not prejudicial to the appellants' right to a fair trial. In arriving at this conclusion we have taken note of the language found in *Sanchez v. Nelson*, 446 F. 2d 849:

". . . [I]n deciding whether or not joint representation deprived one or both defendants of effective counsel, the appropriate inquiries are: Did the representation deprive either or both of the defendants of the undivided loyalty of counsel? Did counsel have to, or did he in fact, 'slight the defense of one defendant for that of another'? (Citing cases.)" (p. 850.)

The state vigorously asserts that defense counsel should have discontinued his joint representation of Sullivan and Smith upon finding their defenses incompatible, and should have asked to be relieved of the defense of one or the other. We are not required at this time to make a judicial pronouncement on this position, but we leave it with counsel for earnest consideration. This is an area in which the trial court will also be interested in seeing that the appellants are fairly tried.

We pass to another matter. Several weeks prior to trial the ad-

ministrative judge sustained a defense motion to require the prosecution to produce for inspection the results or reports of scientific tests or experiments made in connection with the case. The ensuing order specified that compliance be had prior to trial in sufficient time for the defense to prepare for trial. This discovery procedure is authorized by K. S. A. 1971 Supp. 22-3212 (1) (*b*).

Apparently the prosecuting attorney did nothing to comply with the order prior to trial. Then, during presentation of its case in chief, the state proffered the testimony of a fingerprint expert comparing the prints of all three defendants with those of their prior prison records. The purpose for which this evidence was introduced was to establish the prior felony convictions which were essential ingredients of the weapons offenses with which the defendants were charged. The state was also permitted to introduce, again over defense objections, the testimony of a Wichita police officer, attached to the laboratory, to the effect he had test-fired the three weapons and found them operable.

The record does not disclose the basis for the trial court's ruling in admitting such testimony but a quotation found in the state's brief indicates that the judge did not consider the firing of the guns to determine if they were functional to be a scientific test in the sense of a ballistics test. Be that as it may, K. S. A. 1971 Supp. 22-3212 (7) gives the court several options when the prosecuting attorney has not complied with its discovery order. The court may order the offending party to permit the discovery or inspection of materials not previously disclosed, may grant a continuance, or refuse to admit the undisclosed material in evidence, or it may make such other order as it deems just under the circumstances.

In the recent case of *State v. Jones,* 209 Kan. 526, 498 P. 2d 65, we had occasion to consider this problem in some depth in the light both of our statute, which is patterned after Federal Rule 16 (*g*), and of the American Bar Association Project on Standards for Criminal Justice. We shall not repeat what was said in the *Jones* opinion, but we commend its study to the practicing members of the bar. We cannot refrain from re-emphasizing, however, that a discovery order entered by the court is not to be taken lightly by a member of the bar. Once an order has been made directing discovery, counsel has a continuing obligation to see that its terms are carried out in utmost good faith.

We are persuaded that in this case the trial court did not abuse its discretion in admitting the testimony of either the fingerprint

expert or the officer who test-fired the weapons. Upon oral argument of this appeal, counsel for the prosecution stated without contradiction that Mr. Hayes was aware of the tests before the witnesses took the stand and that he was not taken by surprise. In this connection it is worthy of note that no request was made by the appellants at the beginning of or during the trial to permit them to inspect any of the material concerning which the witnesses testified. Neither was any continuance asked for or sought. Moreover, the fingerprint evidence was not the only means available to the state for establishing the appellants' former convictions. Other means of identification were at hand for that purpose. And this court has held that in a prosecution for the felony possession of a firearm there need be no specific showing that the weapon is capable of being fired. (*State v. Omo,* 199 Kan. 167, 174, 428 P. 2d 768.) In that case we said a pistol is a deadly weapon *per se.* The same rationale should apply to a sawed-off shotgun, as well. Although we do not condone the prosecution's failure to honor the discovery order, we cannot say the trial court transcended the limits of a sound discretion to the appellants' prejudice.

Mr. Sullivan challenges Instruction No. 14 which was tailored to apply to him alone. It reads as follows:

"You are further instructed that there has been evidence introduced tending to show that the defendant, JIMMY W. SULLIVAN, has been previously convicted of offense [sic] similar to that charged in the Information.

"You are instructed that such evidence of prior similar offenses was not admitted for the purpose of showing the defendant's guilt of the crime charged, but is competent for the purpose of showing some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

It will be recalled that in the two felony weapons charges filed against Sullivan the information alleged, as an element of those offenses, that within the past five years he had been released from imprisonment for felony. The prior felonies for which he had been imprisoned were stated to be burglary of post offices, bank burglary and conspiracy to commit bank burglary.

If the challenged instruction refers to evidence concerning the burglary convictions set forth in the information, as we presume from appellants' brief that it did, then the instruction, we believe, was erroneous. It would seem clear that whatever evidence was needed to establish the felonies for which Sullivan had been imprisoned would be admissible for that specific purpose, since it

would be required to prove an essential element of the firearms charges. (*State v. Knowles,* 209 Kan. 676, 498 P. 2d 40.) However, that same evidence would not be relevant, in our opinion, in connection with establishing the *possession of the firearms,* which also is an element of the offenses charged. Hence, the jury would not be entitled to consider that evidence as tending to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" unless the former convictions were based on felonies similar in character and design to the offenses presently charged.

It is our view that the former convictions of burglary and conspiracy to commit burglary are not sufficiently similar to the possession of firearms as to be admissible under 60-445 for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Neither is conspiracy to commit *burglary* so similar to conspiracy to commit *robbery* as to make evidence thereof admissible under K. S. A. 60-455 for any of the purposes mentioned therein.

In conclusion, it may not be amiss to say we find no error in the court's having included a flight instruction, in view of the facts and circumstances which were shown to exist in this case. Neither do we consider the instruction on circumstantial evidence to be so confusing or misleading as to have been prejudicial to the appellants when considered in connection with all other instructions given.

The judgment of the court below is reversed and this cause is remanded with directions to grant appellants a new trial in accordance with the views expressed herein.