No. 47,694

THE STATE OF KANSAS, *Appellee*, v. JOE H. MORIN, *Appellant*.

(538 P. 2d 684)

Opinion filed July 17, 1975.

*Michael B. Rees,* of Moulos and Rees, of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Keith Sanborn,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal case in which the defendant-appellant, Joe H. Morin, was convicted by a jury of kidnapping (K. S. A. 21-3420) and aggravated robbery (21-3427). The facts in the case are not in dispute and are essentially as follows: On December 15, 1973, Ronald Bennett, manager of the Old Way Station restaurant in Wichita, interviewed a man calling himself Reed David Taylor for a job as a cook. The man was hired and told to report for work the following day. At the trial Bennett identified the defendant, Joe H. Morin, as being the same person as Reed David Taylor. According to Bennett the defendant reported for work on the following afternoon and worked at the restaurant until it closed at 10:00 p. m. After the restaurant had

been cleaned up, Bennett offered to give the defendant a ride home, which offer the defendant accepted. A short distance from the restaurant the defendant pulled a gun from his coat and ordered Bennett to return to the restaurant. There the defendant compelled Bennett to open the floor safe. At defendant's direction Bennett placed the money from the safe in a brown plastic bag produced by the defendant. The defendant then bound Bennett to a chair with adhesive tape and fled the scene in Bennett's car, a white 1967 Ford Galaxie.

Bennett freed himself after about 15 minutes and immediately summoned the police. Bennett gave the police descriptions of the robber and his car which were immediately broadcast over the police network. A few minutes thereafter Bennett's white Ford was found abandoned near the East Wichita interchange of the Kansas turnpike. The Kansas Turnpike dispatcher was notified by telephone of the abandoned car and was given a physical description of the robber. In turn the dispatcher radioed this information to all turnpike interchanges near Wichita. The East Wichita interchange on receipt of this information notified the turnpike dispatcher that a man matching the description of the robber had entered the turnpike at the East Wichita interchange driving a blue pickup truck. Not long thereafter the turnpike dispatcher was notified by the Wellington turnpike interchange that a man answering the broadcast description and driving a blue pickup truck bearing red and white license plates had left the turnpike at the Wellington interchange taking highway 160. This information was overheard by the Wichita police dispatcher who immediately inserted it into an all-points bulletin. The Wellington police dispatcher, who had received the all-points bulletin from the Wichita police, notified the Oxford, Kansas, police department giving a description of the suspect and the blue pickup truck. Two Oxford officers in a police car heard the broadcast, drove to the outskirts of town, and waited by highway 160. Soon a blue pickup truck bearing red and white license plates drove by. The officers immediately stopped the truck and asked the driver to step out. He complied. The driver was the defendant. The defendant was informed that he was a suspect in an armed robbery in Wichita. One of the officers conducted a pat-down search of the defendant and found a cocked gun in his right-hand jacket pocket. The police broadcast heard by the Oxford officers had stated that the stolen money had been placed in a brown plastic bag. One of the

officers looked through a window into the camper where he observed a brown plastic bag. The defendant was placed under arrest and taken to the Oxford police station. The truck was temporarily left behind but after a short interval of time one of the police officers returned and drove the truck to the police station. There the truck was searched. A brown plastic bag containing two canvas bags of money and a wig were found under the front seat. At the trial this money was identified as the stolen money. The defendant was found guilty as charged. The defendant has appealed to this court complaining of trial errors.

The first point raised on the appeal is that the district court erred in failing to suppress the physical evidence seized from the defendant and his vehicle. The defendant filed a motion to suppress the evidence obtained in the search prior to the trial. An evidentiary hearing was held on this motion and the motion was denied. The defendant's primary concern was the admission into evidence of the brown plastic bag, the stolen money, and the wig. The defendant challenges the legality of the search of his person and his truck on the basis that the search was not incident to a lawful arrest nor was there probable cause to conduct the search. Accordingly he argues that the evidence obtained from the search should have been surpressed. The primary issue for us to determine is whether or not the arresting officers had probable cause to arrest the defendant and search his person and his truck. On the record before us we have concluded that the arresting officers had probable cause to search the defendant's person for weapons and further to search the vehicle to discover the fruits or instrumentalities of the crime. In *Brinegar v. United States*, 338 U. S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302, the United States Supreme Court defined probable cause in the following language:

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' . . . And this 'means less than evidence which would justify condemnation' or conviction, . . . Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. . . ." (pp. 175, 176.)

This court set out similar requisites of probable cause in *State v. Little*, 201 Kan. 94, 439 P. 2d 387, where we said:

". . . Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested." (Syl. ¶ 1.)

In *State v. Frizzell,* 207 Kan. 393, 485 P. 2d 160, we stated in regard to the existence of probable cause:

"There is probable cause to search when there exist facts and circumstances sufficient to warrant a reasonable prudent man to believe that an automobile contains contraband or items which offend against the law." (Syl. ¶ 3.)

For recent cases involving probable cause in the search of an automobile see *State v. McCollum,* 211 Kan. 631, 507 P. 2d 196; *State v. Undorf,* 210 Kan. 1, 499 P. 2d 1105; *State v. Tygart,* 215 Kan. 409, 524 P. 2d 753; and *State v. Mall,* 216 Kan. 287, 532 P. 2d 1048.

When we turn to the evidentiary record record before us it is clear that the Oxford police officers had the following information at the time they stopped the blue pickup truck which the defendant was driving: They knew that an armed robbery had been committed in Wichita that evening, that the suspect was armed with a pistol, and that the money taken had been put in a brown plastic garbage bag. They knew that the robber was a bearded white male, 5' 6" tall, 140 to 160 pounds, stockily built, with shoulder length brown hair which may have been a wig, and wearing gold rim glasses and a jacket with pencils in a sleeve pocket. They also had been informed that the robber had left the scene in a stolen white 1967 Ford Galaxie which shortly thereafter had been found abandoned near the East Wichita turnpike interchange. They had been informed that a man answering the description of the robber had entered the East Wichita turnpike interchange driving a blue pickup truck and that a blue pickup truck bearing red and white license plates driven by a man answering the broadcast description had left the turnpike at the Wellington interchange and had taken highway 160. In a matter of a few minutes the alert Oxford police officers observed a blue pickup with red and white license plates traveling on highway 160. They immediately stopped the vehicle and told the driver to get out of the vehicle. On a pat-down search one of the officers discovered a cocked gun in the defendant's right-hand jacket pocket. One of the officers observed a brown plastic bag through the window of the pickup. The defendant was arrested and taken to the Oxford police station. Without delay one of the officers returned and drove the truck to the police station where the truck was searched.

On the basis of this evidence we have no hesitancy in holding

that the trial court did not err in overruling the defendant's motion to suppress evidence. In making the initial stop of the pickup truck the police officers had a reasonable suspicion that a crime had been committed by the occupant of the vehicle as required by K. S. A. 22-2402 (1). Since the police broadcast had stated that the suspect was armed, they had a reasonable suspicion that their personal safety required a search of the driver for a firearm or other dangerous weapon. This pat-down search of the defendant disclosed a cocked handgun which under the circumstances was properly seized. (22-2402 [2].) See also Terry v. Ohio, 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and Adams v. Williams, 407 U. S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921. The arresting officers then observed a brown plastic bag which matched the description contained in the earlier broadcast. The defendant was immediately arrested. It is clear to us that at this point the officers had probable cause to arrest the defendant and to take into their possession a firearm discovered on the defendant's person.

The defendant complains that there were two conflicting stories given by the state's witnesses as to the source of the information received by the Oxford police officers prior to taking the defendant into custody. The record shows that at the evidentiary hearing on the motion to suppress one of the Wichita police officers testified incorrectly that the source of the information about the defendant's changing vehicles from the white Ford Galaxie to the blue pickup truck was information provided by another Wichita police officer. At the trial where the full testimony was developed it became obvious that the source of the information connecting the robber with the blue pickup truck was an employee at the East Wichita turnpike interchange. We fail to see how this confusion could have any material effect on the determination of the issue of probable cause. The Oxford police officers who stopped and arrested the defendant had received information that a suspect bearing the description of the robber was driving a blue pickup truck. Information in the hands of the arresting officers may properly be received from a number of sources and need not come from a single source. We find no merit in this contention.

The defendant also complains that once the defendant had been taken into custody, the Oxford police should have obtained a search warrant before undertaking to search the defendant's vehicle at the police station. The factual circumstances presented in this case are quite similar to those in Chambers v. Maroney, 399 U. S. 42, 26 L.

Ed. 2d 419, 90 S. Ct. 1975, reh. den. 400 U. S. 856, 27 L. Ed. 2d 94, 91 S. Ct. 23. In *Chambers* it was held that where in the middle of the night and in a dark parking lot, police officers had stopped an automobile and arrested the occupants, their search of the automobile at the police station after both the automobile and the occupants had been taken there was valid on the basis of probable cause. The court recognized that automobiles can be searched without a warrant under circumstances which would not justify the search without a warrant of a house or an office, provided there is probable cause to believe that the automobile contains articles which the officers are entitled to seize. Here the officers had probable cause to believe that the vehicle contained items relating to the crime. Furthermore the amount of time which elapsed between the arrest of the defendant and the search of the truck was relatively short and the officers understandably desired to place the defendant in safe detention before proceeding to search the vehicle. Under all the circumstances we find that the search of the vehicle at the police station was not an unreasonable search and was justified on the basis of probable cause. Before leaving this point it should be noted that there was testimony to the effect that the defendant assented to the search of his truck, although we need not premise our decision on that hypothesis.

The second point raised by the defendant on this appeal is that the trial court erred in overruling the defendant's objection to the introduction of testimony regarding certain fingerprint tests. The defendant complains, and correctly so, that the state did not comply with an order made by the trial court directing the district attorney to produce for examination and inspection by defendant's counsel the results of any physical or scientific tests which the prosecutor would seek to introduce at the trial. The record shows that on January 18, 1974, the defendant filed a discovery motion pursuant to K. S. A. 22-3212 requesting information from the district attorney as to the results of scientific tests. On January 25 this motion was granted but no formal journal entry was ever drawn. On April 8, 1974, the state filed a motion to endorse on the information the names of three additional witnesses: Richard Cook, E. A. Mandeen, and Robert Cocking, all of the Wichita Police Department. Cook is a fingerprint expert and Mandeen is the jailer who took defendant's fingerprints. The motion was granted on April 12, 1974, with the knowledge of and without objection from defendant's counsel. Defendant's trial began on April 17, 1974.

The defendant objected at the trial to the introduction of any testimony concerning fingerprint tests for the reason that he had not been informed of the results of such tests. He contended that any testimony on this subject amounted to noncompliance with the discovery order, surprise, and therefore was substantially prejudicial to the defense. It is clear that the state did not comply with the discovery order. The effect of the failure of the state to comply with a discovery order is set forth in § 7 of 22-3212 which states in substance that if at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an order requiring discovery, the court may (1) order such party to permit the discovery or inspection of materials not previously disclosed, (2) grant a continuance, (3) prohibit the party from introducing in evidence the material not disclosed, or (4) enter such other order as it deems just under the circumstances. Under this section the trial court is given a wide discretion to impose sanctions for failure of a party to comply with an order of disclosure. (*State v. Jones*, 209 Kan. 526, 498 P. 2d 65.) The state in its brief is apologetic about its failure to comply with the order of discovery but contends that the trial court acted reasonably under all the circumstances and did not abuse its discretion. It further contends that the defendant has failed to show that his substantial rights were prejudiced. Under all the circumstances we cannot say that the trial court abused its discretion. In the first place the additional witnesses, Cook and Mandeen, were endorsed on the information without objection from the defendant on April 12, five days prior to the trial. Furthermore the investigator who had lifted the defendant's fingerprints was endorsed as a witness on the original information and the substance of the fingerprint testimony could have been discovered from him. In addition, as soon as the objection to the fingerprint evidence was made by the defendant, the court granted defendant a 25-minute recess during which time defense counsel had the opportunity to inform himself about the evidence. Following this recess no request was made for a continuance by the defendant. The importance of such a motion has been noted in this court in *State v. Jones*, supra, where we said:

"We are impressed that in furtherance of just and expeditious determination of cases, as stated in the ABA Standards, requests for continuance should be utilized where necessary if a party is surprised because of his adversary's failure to disclose in compliance with a discovery order. Such procedure will enable a court more validly to distinguish the good faith request for help from

the development of a mere ploy to be used later upon appeal if needed." (p. 531.)

If the defendant had requested a continuance it is entirely possible that additional time would have been afforded the defendant to determine what should be done to counter this new evidence. In addition it is clear that the defendant failed to ask for a posttrial examination of the fingerprint tests and made no attempt on the motion for a new trial to show that the results of the test were in any way incorrect.

Finally we have concluded that under the totality of the circumstances any error in admitting the fingerprint evidence was harmless error and did not prejudice defendant's right to a fair trial. Here the evidence of guilt was overwhelming. The defendant was positively identified by the victim of the robbery. He was apprehended with the stolen money and wig in his possession. Although the fingerprint evidence aided the prosecution, it was not crucial. Any error committed in regard to the fingerprint evidence cannot be held to be prejudicial error.

For the reasons set forth above the judgment of the district court is affirmed.

FROMME, J., not participating.