No. 48,277

STATE OF KANSAS, *Appellee,* v. WALTER WALKER, *Appellant.*

(559 P. 2d 381)

Opinion filed January 22, 1977.

*J. Paul Maurin, III,* of Maurin, McCamish & Vader, of Kansas City, Kansas, argued the cause, and *M. Warren McCamish* and *Jay H. Vader,* of the same firm, were with him on the brief for the appellant.

*Vernon E. Lewis,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is a direct appeal by defendant from his conviction of aggravated robbery (K. S. A. 21-3427).

The charges against defendant arose from an armed robbery of a filling station in Kansas City, Kansas, on January 24, 1975. About midnight the attendant, Joseph Dobson, observed a late model car pull into the island area of the station. Three or four Negro males were in the car and Dobson testified defendant was one of the occupants. When another customer drove into the station, the first car drove away. A few minutes later, a lone Negro male walked into the station and asked for change. After a brief conversation, the man pulled a revolver and relieved Dobson of thirty-five dollars and a 12-inch black and white television set. The gunman then ran west, making good his escape in the same late model automobile which had previously entered and left the station.

When the police arrived, Dobson was shown a series of police photographs and he identified a photograph of defendant as the gunman. Police then proceeded to defendant's home address in

north Kansas City, Kansas, but received no response to their request for admission to the premises.

At approximately nine o'clock the next morning defendant was arrested at a grocery store near his home.

On January 28, 1975, a line-up was conducted at the Kansas City, Kansas, police department. The victim again identified defendant as the robber. During the course of the trial, Dobson made an in-court identification of defendant.

During cross-examination, defense counsel asked the victim if he had ever recovered his television set and he received an affirmative reply. At this time defense counsel and the prosecutor first learned the set had been recovered. Under further questioning, Dobson indicated the set was returned by the police, but he did not know the officer's name. Defense counsel questioned each of the officers involved with the investigation as to the recovery of the television set. Detective Gerald Gander testified he had no knowledge of the recovery. Detective Lee Simmons testified one of the investigating officers told him the television had been recovered. Defense counsel's cross-examination of each subsequent police officer revealed no additional information about the recovery of the set. During recess of the trial the assistant district attorney attempted to track down information on the recovery and return of the television set, but he found no evidence which would tend to unravel the mystery.

At oral argument before this court the assistant district attorney admitted he had no knowledge of the recovery of the television set until the victim made the revelation at trial. He further stated he had no evidence of the recovery in his file which had been shown to defense counsel pursuant to a court discovery order.

Although the source of the recovered television set was never produced, the evidence established that it did not come from the person of defendant or his home.

Defendant took the stand and presented a defense of alibi. At the time of the robbery he indicated he was at home babysitting with his sister's children because his mother was unable to care for them due to recent surgery. His mother appeared as a witness on his behalf.

The record further indicates defendant testified the police told him during interrogation that the television set was recovered "somewhere." Apparently, defendant did not relay this information to counsel.

The jury returned a guilty verdict. Defendant made a motion for a new trial alleging, among other grounds, that his motion should be granted because the state failed to disclose the manner and place of discovery of the television set. The motion was overruled on the basis that the police department's knowledge of the set was not known by the district attorney and was not imputable to him. It is this ruling which forms defendant's sole point on appeal.

Both parties approach this issue as one involving suppression of evidence. Defendant relies on *Brady v. Maryland,* 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; and its progeny, *United States v. Keogh,* 391 F. 2d 138 (2d Cir. 1968). These cases recognized that failure to disclose evidence favorable to the defense may violate due process and require granting of a new trial, even if the failure was negligent or passive and not intentional. The *Keogh* case established three categories of failure to disclose. They were set forth in *State v. Hill,* 211 Kan. 287, 507 P. 2d 342:

". . . (1) Deliberate bad faith suppression for the very purpose of obstructing the defense or the intentional failure to disclose evidence whose highly probative value to the defense could not have escaped the prosecutor's attention; (2) deliberate refusal to honor a request for evidence where the evidence is material to guilt or punishment irrespective of the prosecutor's good faith or bad faith in refusing the request; and (3) where suppression was not deliberate and no request for evidence was made, but where hindsight discloses it was so material that the defense could have put the evidence to significant use." (p. 292.)

The state, in turn, recognizes the rule set forth in the above cited cases, but argues information in possession of the police should not be imputed to the prosecutor. The mere fact that a prosecutor may not have actual knowledge of evidence which is in the possession of law enforcement officials does not prevent the imputation of such knowledge to the prosecutor in the interest of justice. (See, *State v. Wilkins,* 220 Kan. 735, 556 P. 2d 424; *State v. Humphrey,* 217 Kan. 352, 537 P. 2d 155.)

The arguments of both parties fail to reach the heart of the issue. This is not a case involving the suppression of evidence. Defendant was aware the television set had been recovered by the police well before trial. Furthermore, defense counsel learned of the recovery during trial. Evidence is not suppressed or withheld if the accused has knowledge of the facts or circumstances, or if the facts become available to him during trial. (*United States v. Dye,* 221 F. 2d 763, 767 [3d Cir. 1955]; *United States v. Rutkin,* 212 F. 2d 641 [3d Cir. 1954]; *People v. Rosenberg,* 59 Misc. 2d 1, 297 N. Y. S. 2d 860,

aff'd without opinion, 32 App. Div. 2d 1030, 303 N. Y. S. 2d 1005.)

Other states have held the *Brady* rule does not apply when the defendant or his counsel knew of the exculpatory evidence either before or during trial. (See, *e. g., Lawrence v. State*, 244 So. 2d 446 [Fla. App. 1971]; *The People v. Hudson*, 38 Ill. 2d 616, 233 N. E. 2d 403 [1968]. See also, *In re Razutis*, 35 Cal. 2d 532, 219 P. 2d 15 [1950], cert. denied, 340 U. S. 842, 95 L. Ed. 617, 71 S. Ct. 32.)

Although not explicitly recognized, the rule seems to have support in this jurisdiction. In *State v. Kelly*, 216 Kan. 31, 531 P. 2d 60, the defendant alleged prior inconsistent statements had been suppressed by the state. The trial court disagreed. This court stated:

"In the present case the circumstances of the alleged withholding were examined by the trial court on the motion for new trial. The trial court found that the prosecution did not withhold or suppress the evidence. We agree with that finding.

"The prosecutor upon learning of these prior inconsistent statements, during the progress of the trial, immediately rectified this oversight by placing the investigating officers on the witness stand. The officers were questioned and they testified fully and frankly concerning the extra-judicial statements of Ruppelius [the witness] concerning his sexual activities on the morning in question. The jury was given all evidence available to the prosecution before it retired to consider the verdict. The questionable reliability of the testimony of Ruppelius at the trial was fully exposed to the jury by the prosecutor." (p. 36.)

In *People v. Rosenberg*, supra, the defendant petitioned for a writ of *coram nobis*. He alleged his right to a fair trial was violated by the prosecution's suppression of the negative result of an ultraviolet light test of a towel. The effect of the test was a failure to connect the defendant to an ink-stained towel used in a murder-robbery. When the defendant was taken into custody two detectives ran the ultraviolet test on him and informed him of the test results. Apparently, defendant failed to inform his counsel of the test. The court rejected the petition, stating:

"Evidence is not suppressed or withheld if the accused has knowledge of the facts and circumstances, or if they otherwise become available to him during the trial (*United States v. Dye*, supra).

"The defendant states that he did not make disclosure to his attorneys concerning the test and its result because he 'did not know the law'. The court rejects this as an excuse. He was represented upon the trial by four experienced criminal lawyers. . . . If the defendant did not inform his attorneys, then it is his responsibility and he must bear the legal consequences.

He may not now complain about the suppression of evidence of which he had knowledge but which he did not communicate to counsel." (pp. 2, 3.)

There is a further basis for rejecting defendant's appeal. If the prosecution had failed to comply with the pretrial discovery order, defendant had a remedy under K. S. A. 22-3212 (7). The subsection states:

"If subsequent to compliance with an order issued pursuant to this section, and prior to or during trial, a party discovers additional material previously requested or ordered which is subject to discovery or inspection under this section, he shall promptly notify the other party or his attorney or the court of the existence of the additional material. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

The use and purpose of this subsection have been discussed at length in previous cases. The first of these is *State v. Jones,* 209 Kan. 526, 498 P. 2d 65. There we ruled a trial court is given a wide range of discretion as to the imposition of sanctions for the failure to comply with a discovery order. One remedy was the use of a continuance. We stated:

"We are impressed that in furtherance of just and expeditious determination of cases, as stated in the ABA Standards, requests for continuance should be utilized where necessary if a party is surprised because of his adversary's failure to disclose in compliance with a discovery order. Such procedure will enable a court more validly to distinguish the good faith request for help from the development of a mere ploy to be used later upon appeal if needed." (p. 531.)

See also, *State v. Morin,* 217 Kan. 646, 538 P. 2d 684; *State v. Sullivan & Smith,* 210 Kan. 842, 504 P. 2d 190.

If defense counsel felt the revelation concerning the television set was critical, it was incumbent on him to move the court to grant a continuance or invoke some other sanction. He failed to do so. In addition, it is clear defendant failed to undertake any posttrial investigation and made no attempt to subpoena and question police officials on the motion for a new trial.

The judgment is affirmed.