(680 P.2d 922)

No. 56,013

STATE OF KANSAS, *Appellant*, v. RALPH WANTTAJA, *Appellee*.

Opinion filed May 3, 1984.

*Francis E. Meisenheimer*, assistant county attorney, and *Robert T. Stephan*, attorney general, for the appellant.

*Herbert R. Hess, Jr.*, of Hess, Leslie & Brown, of Hutchinson, for the appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an interlocutory appeal by the State from the trial court's decision on the day of trial to suppress the results of a blood alcohol test administered to defendant, Ralph Wanttaja.

Defendant was arrested on October 1, 1982, for driving under the influence of alcohol, in violation of K.S.A. 1982 Supp. 8-1567. At that time defendant took a test, administered on an intoxilyzer, to determine blood alcohol content. Defendant requested a copy of the blood alcohol test (B.A.T.) results, but never received it. Defense counsel was given permission by the prosecutor to obtain defendant's arrest records, kept in the Hutchinson Police Department files. When defense counsel asked the

HPD records clerk for "defendant's arrest reports," he received a copy of the arresting officer's report, but no intoxication report or B.A.T. results. Defense counsel did not specifically ask the clerk for the B.A.T. results.

Further, defense counsel did not file a motion for discovery, since the prosecutor had on prior occasions assured him that this was unnecessary, as the State would give defense counsel records and test results on oral request. The prosecutor was unaware until the day of trial that defense counsel had not received a copy of defendant's B.A.T. results, which show defendant's alcohol level as .19% and establish a presumption of defendant's intoxication at the time of his arrest.

On the day of trial, defendant moved to suppress the B.A.T. results because they had not been delivered to defendant as is required by K.S.A. 8-1002. The motion was granted. The State appeals from this suppression order.

Defendant contends that this court does not have jurisdiction to hear this interlocutory appeal. The State, in its brief, does not address the jurisdictional issue, which is governed by K.S.A. 22-3603. Although no printed record of the proceedings below has been forwarded to this court, we shall assume that the judge's order "suppressing" the results of the blood alcohol test was made "prior to the commencement of trial," and not after trial had begun.

This court provided an extensive discussion of when it has jurisdiction to hear an interlocutory appeal concerning a trial court's order suppressing evidence in *State v. Boling,* 5 Kan. App. 2d 371, 617 P.2d 102 (1980). *Boling* held that "[a]n interlocutory appeal by the State will lie from an order 'suppressing' evidence on constitutional grounds or as a sanction for official 'misconduct,' but not from an order excluding evidence on grounds based on the rules of evidence, such as lack of relevance or materiality." Syl. ¶ 5. *Boling* was recently cited with approval in *State v. Martin,* 233 Kan. 148, 150, 660 P.2d 563 (1983), where the court stated:

"The purpose of K.S.A. 22-3603 is to permit appellate review of pretrial rulings which may be determinative of the case. *State v. Burnett,* 222 Kan. 162, 166, 563 P.2d 451 (1977). See also *State v. Boling,* 5 Kan. App. 2d 371, 617 P.2d 102 (1980), which provides a thorough analysis of the statutory scheme and the difference between an order 'suppressing' evidence obtained in violation of constitutional rights and one 'excluding' evidence because of evidentiary rules."

The trial court in the present case excluded results of the blood alcohol test because the State had failed to comply with K.S.A. 8-1002's requirement that a report of the test be delivered, upon request, to the person submitting to the test. This evidence was not excluded on grounds arising under the rules of evidence. Rather, the order had a purpose closely akin to that of the general exclusionary rule. The order served as a sanction for official conduct deemed prejudicial to the defendant and to deter such conduct in the future. As such, we view the order as having "suppressed" evidence within the meaning of K.S.A. 22-3603. Under the facts of this case, the State's interlocutory appeal is proper.

The State's only argument on appeal is that the trial court erred in suppressing the results of the blood alcohol test. The court suppressed the results because the State had failed to deliver a copy of the results to the defendant upon defendant's request as is required by K.S.A. 8-1002.

K.S.A. 8-1002 provides:

"Upon the request of any person submitting to a chemical test under this act, a report of the test shall be delivered to such person."

Although the statute itself is unambiguous, it is silent as to the time in which the State must deliver the record to the requesting defendant, and as to the sanctions for noncompliance with its provisions.

K.S.A. 22-3212, the general discovery and inspection statute, vests power in the trial court to suppress the results of the B.A.T. K.S.A. 22-3212(1) provides in part:

"Upon request, the prosecuting attorney shall permit the defendant to inspect and copy or photograph any relevant . . . (b) results or reports of physical . . . examinations, and of scientific tests . . . made in connection with the particular case . . . . ."

Unlike K.S.A. 8-1002, K.S.A. 22-3212(7) makes clear the penalty for noncompliance:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

In the present case, defendant's counsel requested "defendant's arrest reports" from the Hutchinson Police Department clerk, but received only a copy of the arresting officer's report. Although this police department file apparently contained a copy of the intoxication report and of the B.A.T. results, neither of these was given to defendant's counsel due to the clerk's "mistake." Defendant's counsel did not file a written motion for discovery because he had been told by the prosecutor that this was not necessary. As part of his trial strategy, defendant's counsel did not inform the State that he had not received the B.A.T. results until just before the trial commenced.

The parties agree that sanctions, including absolute exclusion of the material from evidence, are to be left to the discretion of the trial court. See K.S.A. 22-3212(7).

"Factors to be considered by the trial court in imposing a proper sanction include: surprise to the defense as to the contents (*State v. Jones*, 209 Kan. 526, 498 P.2d 65); absence of a request to inspect the materials (*State v. Sullivan & Smith*, 210 Kan. 842, 504 P.2d 190); the amount of other evidence bearing on guilt (*State v. Morin*, 217 Kan. 646, 653, 538 P.2d 684); and prejudice, if any, to the defense (*State v. Johnson*, 219 Kan. 847, Syl. 1, 549 P.2d 1370)." *State v. Villa & Villa*, 221 Kan. 653, 656-57, 561 P.2d 428 (1977).

The sole stated reason for the court's exclusion of the B.A.T. results is the State's noncompliance with K.S.A. 8-1002. However, implicit in the court's ruling is its recognition that the defendant could be unfairly surprised by the admission at the trial of the B.A.T. results, since their content had not been disclosed to the defendant in previous testimony. Further, the court was aware that both defendant, when tested, and defendant's counsel, when he asked for defendant's arrest records, had requested that information.

Although the amount of other evidence bearing on defendant's guilt is difficult to determine at this early stage of the proceedings, the court's admission that the B.A.T. results are important is some indication that there may not be other overwhelming or uncontradicted evidence bearing on defendant's guilt.

Additionally, the court knew that the admission of the B.A.T. results would be prejudicial to defendant. The B.A.T. results, included in the record on appeal, show that defendant's blood alcohol content was .19% on October 1, 1982, when he was arrested for DUI. K.S.A. 8-1005 states that a blood alcohol content of .10% by weight establishes a presumption of intoxication.

Admission of the B.A.T. results would have established a prima facie case that defendant was under the influence of alcohol to a degree that rendered him incapable of driving safely.

The State admits that the trial court is granted broad discretion in matters concerning the admission of evidence, see *State v. Beard,* 220 Kan. 580, 584, 552 P.2d 900 (1976), but argues that the court abused its discretion in this case. This claim of abuse is based on the following points: (1) The State's failure to provide defendant with a copy of the B.A.T. results was inadvertent error and not intentional wrongdoing; (2) the court could have granted a continuance instead of imposing the harshest remedy possible; (3) the B.A.T. results are an "important part" of the State's case; and (4) defendant "ambushed" the State by not informing the State before trial that defendant had not received a copy of the test results.

Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.,* 234 Kan. 121, 131, 671 P.2d 511 (1983).

Although the sanction imposed by the court could be considered severe, the State apparently elected not to request a continuance in which to comply with K.S.A. 8-1002's mandate. Under all the circumstances, we cannot say that no reasonable man would have taken the view adopted by the trial court.

Affirmed.

FOTH, C.J., concurring and dissenting:

I agree that the suppression order in this case is appealable, particularly in the light of *State v. Newman,* 235 Kan. 29, 680 P.2d 257 (1984). Although imposed as a sanction for failure of discovery and not on constitutional grounds, the order absolutely denied the State the use of the breath test results. Those results, as any lawyer knows, are key evidence in any prosecution for driving under the influence.

I also agree that the sanction to be imposed for failure to make discovery is, under K.S.A. 22-3212(7), within the discretion of the

trial court. Failure to furnish the test results to the defendant personally, as required by K.S.A. 8-1002, should be governed by the same principles. The value of the results to the defendant lies in their potential use in the DUI prosecution; it matters not whether they are obtained by the defendant personally or by his lawyer, or whether under one statute or the other.

I cannot agree, however, that the sanction of suppression represents a proper exercise of judicial discretion under the circumstances of this case. I am as reluctant as any appellate judge to find an abuse of discretion in a trial court's order, and I am aware of the rubric found in countless cases that discretion is abused only when no reasonable person would take the view adopted by the trial court. Nevertheless, I also bear in mind the words of the late Justice Fontron in *State v. Collins,* 195 Kan. 695, 700, 408 P.2d 639 (1965):

"The discretion lodged within a court is not a boundless, but a judicial, discretion. It is a discretion limited to sound judgment to be exercised, not arbitrarily, but with regard to what is right and equitable under the circumstances and the law."

The same sentiment has been recently echoed in much the same language in *State v. Goering,* 225 Kan. 755, Syl. ¶ 9, 594 P.2d 194 (1979). It was put slightly differently in *Vickers v. City of Kansas City,* 216 Kan. 84, Syl. ¶ 4, 531 P.2d 113 (1975):

"Discretion may be defined as the freedom to act according to one's judgment. Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence—to act upon fair judicial consideration and not arbitrarily."

The first case dealing with discretion and discovery in the context of our present code of criminal procedure is *State v. Jones,* 209 Kan. 526, 498 P.2d 65 (1972). After noting that sanctions are a matter for the trial court's discretion, the court outlined general guidelines:

"In exercising its discretion as to whether sanctions should be applied for violation of a discovery and inspection order the trial court should take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." Syl. ¶ 2.

The court went on to approve in general the ABA Standards Relating to Discovery and Procedure Before Trial, § 4.7 (Ap-

proved Draft 1970), including the following comment of the drafting committee:

"The Committee's general view  .  .  .  was that the court should seek to apply sanctions *which affect the evidence at trial and the merits of the case as little as possible,* since these standards are designed to implement, not to impede, fair and speedy determinations of cases." 209 Kan. at 530. Emphasis added.

Finally, the court observed:

"We are impressed that in furtherance of just and expeditious determination of cases, as stated in the ABA Standards, requests for continuance should be utilized where necessary if a party is surprised because of his adversary's failure to disclose in compliance with a discovery order. Such procedure will enable a court more validly to distinguish *the good faith request for help from the development of a mere ploy* to be used later upon appeal if needed." 209 Kan. at 531. Emphasis added.

The above language was quoted and its principle applied in *State v. Walker,* 221 Kan. 381, 385, 559 P.2d 381 (1977). In both *Jones* and *Walker* the defendant complained of nondisclosure by the State. In each the failure of the defendant to pursue the desired information with diligence and to request a continuance was held to preclude the defendant's complaints about the introduction of the evidence.

*State v. Wilkins,* 220 Kan. 735, 556 P.2d 424 (1976), is in the same vein. There the State could not produce the written statements of witnesses, made to police officers, as required by K.S.A. 22-3213(2). It was held that in determining what sanctions to impose the trial court had properly employed a "balancing test," taking into account among other things: why the statements couldn't be produced, fault on the part of the State, the importance of the testimony, and the other evidence in the case. 220 Kan. at 741-42.

The situation was likened to that in a civil case where dismissal is sought for noncompliance with a discovery order:

"[T]he trial court in the exercise of sound judicial discretion must consider the materiality and importance of the documents not produced, whether the failure to produce is caused by inability, willfulness or bad faith, *and whether some available sanction short of dismissal will protect the party seeking discovery."* 220 Kan. at 742, citing *Vickers v. City of Kansas City,* 216 Kan. 84. Emphasis added.

Similar criteria were promulgated in *State v. Villa & Villa,* 221 Kan. 653, 656-7, 561 P.2d 428 (1977):

"When the prosecution is charged with having failed to comply with a discovery order the sanctions to be imposed under K.S.A. 22-3212(7) must be left to the discretion of the trial court. The sanctions may range from an allowance of an inspection to an absolute exclusion of the materials from evidence. Factors to be considered by the trial court in imposing a proper sanction include: surprise to the defense as to the contents (*State v. Jones,* 209 Kan. 526, 498 P.2d 65); absence of a request to inspect the materials (*State v. Sullivan & Smith,* 210 Kan. 842, 504 P.2d 190); the amount of other evidence bearing on guilt (*State v. Morin,* 217 Kan. 646, 653, 538 P.2d 684); and prejudice, if any, to the defense (*State v. Johnson,* 219 Kan. 847, Syl. 1, 549 P.2d 1370)."

I view three factors as significant in this case:

1. Both defendant and his attorney knew a breath test had been administered, so there was no surprise on that score. Although the exact results were unknown, counsel surely surmised that defendant had tested over 0.10%.

2. When defense counsel asked to see the police reports, permission was freely given. Under Reno County's peculiar manner of operation it was necessary for defense counsel to go to the Police Department to see the reports. There, by an apparent error on the part of clerical personnel, defendant's file contained arrest reports (including the field sobriety test report) but no breath test. Counsel never specifically asked for the breath test results, and so far as the prosecutor knew he had divulged everything in the State's possession. There is no claim of bad faith or that the prosecutor wouldn't have cured the clerical oversight had it been known to him. Thus there was no willful refusal to disclose, as there was in all those cases, criminal and civil, where ultimate sanctions have been approved. In a sense, there was no real request to see the breath test results.

3. Defense counsel at that point knew there had been a breath test, *knew* he didn't have the test results, and also knew *they would be made available on request.* We were advised at oral argument that, as a matter of strategy, he chose instead to wait several months, and then make the oral motion to suppress on the morning of trial. This was surely "the development of a mere ploy" and not a "good faith request for help," which *Jones* and *Walker* tell us are to be judicial benchmarks.

The undisputed facts in this case lead me to conclude that the sanction imposed was disproportionate to the harm sought to be corrected and results in manifest injustice to the State. As this court has said, "A court should impose sanctions which are

designed to accomplish the objects of discovery and not for the purpose of punishment." *Independent Mfg. Co. v. McGraw-Edison Co.*, 6 Kan. App. 2d 982, 988, 637 P.2d 431 (1981).

The object of discovery in a criminal case is to apprise the defendant of the nature of the evidence he will have to meet. Defendant here knew he would have to meet the results of a breath test. By the time of trial the defense had had plenty of time to secure the test results if it really wanted them. When the issue was raised the day of trial the defense could easily have been "made whole" by relevation of the results at that time, plus a continuance if requested and necessary. A continuance was the preferred remedy under *Jones* because, in the words of the ABA Standards, it would "affect the evidence at trial and the merits of the case as little as possible."

Under cases like *Jones* and *Walker* it was incumbent upon the defendant, not the State, to request a continuance. Defendant's failure to do so indicates far more interest in securing a huge tactical advantage than in a fair chance to meet the State's evidence. Further, in the absence of a request by either party, the court could have ordered a continuance on its own motion if deemed necessary to protect defendant's rights.

I would reverse.