No. 46,033

STATE OF KANSAS, *Appellee*, v. CLAUDE HOWARD JONES, *Appellant*.

(498 P. 2d 65)

Opinion filed June 10, 1972.

*Phillip C. Lacey,* of O'Keefe, Ball, McKelvy and O'Keefe, of Atchison, argued the cause and was on the brief for the appellant.

*Patrick J. Reardon,* county attorney, argued the cause, and *Vern Miller,* attorney general, and *R. B. Miller, III,* special prosecutor, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Claude Howard Jones was tried and convicted by a jury of the offense of murder in the first degree. His motion for

new trial was overruled, he was sentenced to life imprisonment and he now appeals.

Appellant and the victim of the alleged offense were inmates of the same cell house at the Kansas State Penitentiary at Lansing on May 30, 1968, when the latter was burned to death as a result of having combustible material thrown on him in his cell and ignited. The defense offered at trial and supported by several inmates was an alibi—that appellant was in the prison mess hall at the time of the commission of the crime.

The sufficiency of the evidence to sustain the conviction is not an issue in this appeal; however, we are told that the principal witness against appellant was an accomplice who assisted in preparing the material used to burn the victim. This witness identified appellant as one of two masked men who doused the victim with a mixture of glue, thinner and gasoline and then ignited it. Testimony was also adduced as to appellant's motive for the killing.

Trial errors are asserted upon appeal, the first of which involves violations of a discovery order.

Upon appellant's motion for discovery the trial court issued a pretrial order directing that the prosecution make available to the attorney for the appellant, among other items, any diagrams or sketches and any scientific evidence of chemical analysis intended to be used by the state at the trial. No such items were ever furnished appellant by the state prior to trial.

At trial a diagram of the cell house where the killing occurred was received in evidence over appellant's objection. The state also produced as a witness a chemist in the laboratory section of the Kansas State Board of Health and Laboratory Services who had analyzed certain material received from the Leavenworth county sheriff and had prepared a report thereon. The material was shown to have been that used in the fire. This report was admitted into evidence, again over appellant's objection. In each instance, prior to ruling on the objection as to the cell house diagram and the chemical analysis report, the trial court called upon the then county attorney for any statement he cared to make concerning his failure to furnish copies of the documents to appellant and in each instance comment was declined.

Appellant urges reversal of his conviction because of the trial court's action in overruling his objection to the use of the exhibits without even requiring an explanation of the state for its failure

to comply with the clear and explicit terms of the discovery order. He asserts surprise by reason of the use of the documents and he cites certain federal decisions to be presently mentioned.

Appellee responds there was no surprise with respect to the cell house diagram inasmuch as appellant was thoroughly familiar with that edifice by reason of having been confined there and that appellant's counsel was never denied access to investigate the scene of the crime. With respect to both exhibits the state points out appellant made no request for continuance and the record does not reflect prejudice resulting from the rulings.

The discovery order was made October 31, 1968. Trial was had April 21-25, 1969—prior to the effective date of our present criminal procedural code. The order was nonetheless within the competence of the trial court to make and the unaccounted for failure by the then county attorney to comply with it can only be regarded as a dereliction of duty. The question remains as to the propriety of the trial court's disposition of the matter.

The discovery order made by the court was comparable to pretrial discovery and inspection now authorized by K. S. A. 1971 Supp. 22-3212, which became effective July 1, 1970. This statute is based upon Rule 16 of the Federal Rules of Criminal Procedure and, like its parent, contains the following provision respecting failure to comply with any order made:

"(7) . . . If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

The clear import of this proviso, which is identical to one contained in Federal Rule 16 (g), is to vest the trial court with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order and federal tribunals have so held (see cases cited 1 Wright, Federal Practice and Procedure, §§ 260-261).

In *Hansen v. United States,* 393 F. 2d 763 (CA8, 1968), it was held that Rule 16 (g) relating to failure to comply with a discovery order does not require the application of sanctions but allows the trial court discretion in admitting proper evidence not disclosed to defendant as contemplated by a pretrial order.

Respecting the application of sanctions under Federal Rule 16 (g), the following is stated in 1 Wright, *ibid.*, § 260:

"In exercising the broad discretion as to sanctions given by this provision, the court should take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." (p. 533.)

See, also, Federal Advisory Committee's Note on Rule 16, 39 F. R. D. 175, 178.

In *United States v. Kelly*, 420 F. 2d 26 (CA2, 1969), strongly relied upon by appellant here, two city narcotics detectives were convicted of offenses growing out of their trafficking in narcotics seized by them in drug raids. The government had been ordered to make discovery of scientific tests of the narcotics which were conducted in order to show their identity and origin but it failed to apprise the defendants of the tests until the results were offered in evidence at the trial. The defendants' objection to this evidence was overruled as was their subsequent request for a month's continuance in order to carry out their own version of the tests. Upon appeal the court found reversible error in permitting use of the tests when timely disclosure had not been made. New trial was ordered.

In *United States v. Allsenberrie*, 424 F. 2d 1209 (CA7, 1970), the court condemned intentional governmental noncompliance with pretrial discovery orders but held that under the particular circumstances no abuse of discretion existed because the record indicated no prejudice to the defendant resulted from the noncompliance.

In *United States v. Saitta*, 443 F. 2d 830 (CA5, 1971), the court, after announcing the rule that appropriate relief for violation of discovery orders lies within the sound discretion of the trial court, held that error in administering the discovery rules is not reversible absent a showing the error was prejudicial to the substantial rights of the defendant.

The matter at issue has been the subject of consideration by the American Bar Association Project On Standards for Criminal Justice. In its Standards Relating To Discovery and Procedure Before Trial, Approved Draft, 1970, the following is stated:

"4.7 Sanctions.

"(a) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable

discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

(*b*) Willful violation by counsel of an applicable rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

"*Commentary*

"Most of the persons to whom the standards are largely addressed—lawyers and judges—are likely to comply with them regardless of any specified sanctions. Accordingly, the Advisory Committee considered its principal task was to be the formulation of such standards so that these lawyers and judges would be clearly informed as to what their duties are. At the same time, it remains true that rights and duties are ephemeral indeed without remedies. Thus, by this standard, the Committee intends to emphasize that discovery rules must be enforced.

"Rather than attempt to provide specific sanctions for specific violations, the Committee deemed it wise to leave the sanctions by and large to the discretion of trial courts under appellate court supervision. It was thought useful to suggest that explicit orders to disclose may be effective where persons affected fail to understand the more general provisions of a rule or statute. If the duty breached is clear, however, it would usually be inefficient as well as superfluous to issue further orders. *Continuances should also be utilized where necessary if a party is surprised because of his adversary's failure to disclose.* Beyond these two specific suggestions, the Committee is of the view that other specific suggestions would tend to limit the ingenuity of trial courts with respect to matters peculiarly suited to their judgment and administration. [Emphasis supplied.]

". . . The Committee's general view . . . was that the court should seek to apply sanctions which affect the evidence at trial and the merits of the case as little as possible, since these standards are designed to implement, not to impede, fair and speedy determinations of cases.

"With few exceptions . . . the obligations imposed under these standards fall upon attorneys. Accordingly, it would seem appropriate to deal with breaches in the same way as infractions of bar discipline. Future canons of ethics might specifically so provide. Similarly, the courts' contempt power would seem especially appropriate to willful infractions by lawyers. Subsection 4.7 (*b*) indicates that such sanctions should be applied to attorneys where appropriate." (pp. 106-108.)

In the light of the foregoing principles, which appear cogent and persuasive, we turn to the question whether abuse of discretion by the trial court is shown in the case at bar. We hold it is not.

As already indicated, when the trial court overruled appellant's trial objections to the use of the exhibits which had not been previously disclosed, there was no request for continuance to meet the situation. In the colloquy which occurred at the time the objections

were made there was no assertion of surprise from the contents of the documents. Use of neither exhibit appears to have been of great moment at the trial. The record on appeal and briefs of the parties indicate that the principal issue was the identity of the masked pair who threw the combustible material into the victim's cell. Appellant's defense was that of alibi—he could not have committed the offense because he was in the mess hall at the crucial time. Use of the chemical analysis report was not called to the trial court's attention in the motion for new trial and appellant has not now demonstrated prejudice in the trial court's admission of the challenged exhibits—he simply seeks the remedy of reversal because of the violation.

We are impressed that in furtherance of just and expeditious determination of cases, as stated in the ABA Standards, requests for continuance should be utilized where necessary if a party is surprised because of his adversary's failure to disclose in compliance with a discovery order. Such procedure will enable a court more validly to distinguish the good faith request for help from the development of a mere ploy to be used later upon appeal if needed.

Our conclusion that the interests of justice do not require reversal on this issue should in nowise be taken as condonation of the action of the state's trial attorney. As stated in *Pierce v. United States*, 414 F. 2d 163, (CA5, 1969):

"Once an order has been directed to counsel, the court's ruling must be complied with in spirit as well as in letter, and information may not be withheld with the notion that this can be done with impunity if the evidence is ultimately found not to be helpful to the defense." (p. 169.)

Finally, appellant complains the trial court over his objection improperly permitted a doctor not licensed in the state of Kansas to testify respecting the death of the victim. The witness in question performed an autopsy on the victim's body.

For his assertion of error appellant relies primarily on K. S. A. 1971 Supp. 19-1033, which in pertinent part provides:

"If, in the opinion of the coroner, it is advisable and in the public interest that an autopsy be made, or if an autopsy is requested in writing by the county attorney, such autopsy shall be made by the coroner or by such competent pathologist or other licensed physician as may be designated by the coroner for the purpose."

In connection therewith appellant also points to the provisions of K. S. A. 65-2501 (2) and K. S. A. 72-5384 (c) which in essence

define a physician as one authorized or licensed by law to treat sick and injured persons. Appellant contends the legislature intended by the foregoing statutes that only those licensed as physicians may perform autopsies and therefore one not so licensed should not have been permitted to testify.

The witness testified he was a doctor of medicine although he was not licensed as such in Kansas and did not possess a federal narcotics number; that he attended medical school at the University of Mexico five and one-half years and obtained a degree in medicine; he did a six months' internship in pathology in Mexico, a six months' rotating internship in Chicago, then a four years' residency in pathology in Mexico; at the time of testifying he was a teacher associate in the pathology department of the University of Kansas Medical Center and a staff member of that institution; he had had experience with burn cases. He also testified he performed the autopsy in question under the direct supervision of a Dr. Frankle who was a licensed physician; that Dr. Frankle examined the body before the autopsy commenced, was present in the room during the actual operation for about twenty or thirty minutes and with the witness reviewed the organs after completion of the operation.

Statutory qualifications for a physician aside, we have always held that, pursuant to K. S. A. 60-419 and 60-456 (*b*) and (*c*), a trial court has discretion to determine the qualification of a witness to testify as an expert and the admissibility of that testimony (*Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822; *Avey v. St. Francis Hospital & School of Nursing*, 201 Kan. 687, 442 P. 2d 1013). In *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 431 P. 2d 518, we held that the test of competency of an expert witness is whether he discloses sufficient knowledge of his subject to entitle his opinion to go to the jury.

A situation analogous to that at bar was presented in *Hayes v. United States*, 367 F. 2d 216 (CA10, 1966), a prosecution of an inmate of the federal penitentiary at Leavenworth, Kansas, for the murder of a fellow inmate. A medical practitioner who was not licensed in Kansas as a physician testified as to the results of an autopsy performed by him on the murder victim. Upon appeal from his conviction the defendant asserted K. S. A. 19-1033 in bar of the testimony. The trial court had received evidence of the witness' medical experience and competence. In disposing of the defendant's objections the appellate court stated:

"It appears to the Court that Dr. Quinn was well qualified as an expert, and whether or not he was licensed in the State of Kansas did not control in this case. We need not enter into a discussion of that phase of the objection.

"It is well settled that medical experts may be permitted to testify in matters concerning which they are qualified even though they may not be licensed to practice medicine in the jurisdiction involved. 32 C. J. S. Evidence § 546 (92) pages 336-346.

"We do not pass on the question of whether or not Dr. Quinn falls within the provision of the statute. In any event we feel that he is an expert whose testimony was admissible at the trial. [Citations.]

"Dr. Quinn was well qualified by both training and experience to give expert testimony in the matter of autopsies, and the Court did not err in admitting his testimony." (p. 222.)

Abuse of discretion by the trial court in permitting the challenged witness to testify is not shown.

The judgment is affirmed.

APPROVED BY THE COURT.