NOT DESIGNATED FOR PUBLICATION

No. 118,517

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW ROY ABRAMS HAMILTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed March 1, 2019. Reversed and remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.


PER CURIAM:  Matthew Roy Abrams Hamilton appeals from his convictions for felony fleeing and eluding and criminal damage to property. Hamilton argues the district court unlawfully deprived him of the constitutional right to present his theory of defense at trial. Based on this constitutional violation, Hamilton asks us to reverse his convictions and remand his case for a new trial. Upon consideration of the arguments presented by the parties and a comprehensive and detailed review of the sizeable record in this matter, we are persuaded the district court committed reversible error by excluding the report and testimony of the defense expert as a sanction for what the district court perceived to be a

1

violation of a discovery order. Thus, for the reasons stated below, we reverse Hamilton's convictions and remand his case for a new trial.

## FACTS

On May 24, 2015, outside of the Lawrence Community Shelter, Hamilton tried to convince his sister and nephew to come home with him. Because of the commotion, law enforcement arrived to investigate. Although Hamilton's family ultimately agreed to go home with him, they never made it. Instead, Hamilton headed away from the community shelter and to the jail service entrance. He stopped at the sally port, spoke with someone through the intercom, and walked into the building. Hamilton emerged from the building with a plastic bag and a security wand.

Hamilton's family got out of the car and Hamilton drove off, leading officers on a high speed chase. He weaved from lane to lane, crossed the center line, and ran red lights. The chase ended when Hamilton struck a telephone pole and his car became disabled.

On June 29, 2015, the State filed an information charging Hamilton with aggravated burglary of the jail, fleeing or attempting to elude a police officer, criminal damage to property, and false impersonation of an officer.

On October 1, 2015, Hamilton waived his right to a preliminary hearing and entered pleas of not guilty on all counts charged against him. Over the course of the next year, several trial dates were set and subsequently canceled as the parties attempted to negotiate a plea.

On July 21, 2016, the district court held a status conference and set the matter for jury trial to begin on November 30, 2016.

2

On September 1, 2016, defense counsel notified the State that he intended to raise the defense of mental disease or defect. Hamilton submitted to psychological testing through his expert witness.

On September 14, 2016, the State filed a motion requesting the court to order Hamilton to provide reciprocal discovery pursuant to K.S.A. 2017 Supp. 22-3212(c). This statute provides as follows:

"(c) If the defense seeks discovery and inspection under subsection (a)(2) or subsection (b), the defense shall:

(1) Permit the attorney for the prosecution to inspect and copy or photograph scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defense intends to produce at any hearing, are material to the case and will not place an unreasonable burden on the defense; and

(2) provide for the attorney for the prosecution a summary or written report of what any expert witness intends to testify, including the witness' qualifications and the witness' opinions, at a reasonable time prior to trial by agreement of the parties or by order of the court."

Notwithstanding the limited scope of reciprocal discovery permitted under K.S.A. 2017 Supp. 22-3212(c), the State requested in its pleading that the district court order Hamilton to produce four categories of discovery:

"a copy of any expert report, bench notes, correspondence, and other papers, books, articles, and/or treatises relied upon by any expert. . . . [A] complete list of any 'expert' experience, including cases in which the 'expert' testified; a copy of the expert's contract and fee; [and] any document or a copy of any document used, prepared, referenced or relied upon by the analyst or expert in performing neurological, psychiatric, and/or medical tests or in forming and/or expressing an opinion."

On September 28, 2016, defense counsel filed a pleading in opposition to the State's motion, arguing the request was premature and overly broad. Defense counsel noted that K.S.A. 2016 Supp. 22-3212(c) applied only to documents the defendant intends to produce at any hearing that are also material to the case and will not unreasonably burden the defense. Noting that the defense had not yet received a written final report from Dr. Robert Barnett, the defense did not know what, or if, it intended to produce any scientific or medical reports at trial. Defense counsel also asked that the defense not be compelled to hand over all discovery itemized in the State's request because the requests were overly broad and would permit the State to receive protected information to which it may not be entitled.

On September 30, 2016, the district court held a hearing on the motion. In support of its request, the State claimed it could not make an informed decision regarding whether to hire its own expert until it had a chance to review the reciprocal discovery requested. In response, defense counsel reiterated that it would be premature for the court to rule on the State's request because Hamilton's expert had not yet submitted his report. With regard to the overly broad nature of the reciprocal discovery request, Hamilton asked the court to allow the parties time to work out the scope of discovery permitted under the statute after the expert report was submitted, which he anticipated receiving in the next few days.

The district court orally granted the State's motion but specifically limited the scope of production to only those items in defense counsel's possession. With that limitation, the court ordered defense counsel to provide the State with an "unredacted sealed copy of everything within the scope of the discovery" no later than three days after receiving the discovery materials from Dr. Barnett. If defense counsel believed the materials it possessed contained privileged or other nondiscoverable information, defense counsel was directed to set the matter for a follow-up hearing to resolve the issue. In the

4

event such a follow-up hearing was needed, the court said it would hear the matter during the next scheduled status hearing, which it set for October 21, 2016.

On or about October 3, 2016, defense counsel provided the reciprocal discovery in its possession as ordered by the court. No discovery pleadings were filed by either party with regard to this discovery.

On October 21, 2016, the parties appeared for a status hearing. Defense counsel informed the district court that it had produced all of the reciprocal discovery in its possession. The discovery consisted of Dr. Barnett's report, which included a narrative of the expert's opinion and identification of the tests upon which the expert relied to render that opinion. Defense counsel stated that if the State wanted Hamilton to undergo alternate psychological testing to challenge the opinion rendered by Dr. Barnett, Hamilton would agree to submit to such testing. The court questioned whether the State was going to request an independent evaluation of Hamilton or if it would proceed in some other fashion. The State did not respond to the question posed, but instead said it intended to file a motion barring the introduction of Dr. Barnett's testimony on grounds that the information and opinion provided by Dr. Barnett in his report was not sufficient evidence to support a mental disease or defect defense. The court ordered briefing on the issue and set a hearing date of November 15, 2016.

On November 15, 2016, the district court heard argument from counsel and conducted an in camera review of the opinion submitted by the expert who conducted the psychological evaluation of Hamilton. The court ultimately denied the State's motion to exclude the expert testimony, finding the expert report met the necessary legal standards under Kansas law. In its memorandum decision, the court directed that the status conference scheduled for November 21, 2016, should remain on the docket. Although not stated in the court's memorandum decision, the November 30, 2016 jury trial also remained on the docket.

At the November 21, 2016 status conference, defense counsel requested a new status conference and a new trial date. In support of his requests, defense counsel asserted: (1) that he had received an e-mail from the State that morning seeking additional discovery and counsel was still in the process of gathering the requested information, (2) that given the district court's decision finding the defense expert's report adequate, continuing the trial date would allow the State to obtain a rebuttal expert witness, and (3) that the defense expert was not available for trial on November 28, 2016. Defense counsel went on to say that if the court set the matter for a status conference in the first part of December, counsel should have the defense expert's schedule "and then by that time I will disclose the information that the State's requesting, and we will have more information about that at that time." At the end of the hearing, the district court granted Hamilton's motion to continue trial.

At a February 7, 2017 motions hearing, the State orally renewed its motion to compel Hamilton to produce the discovery requested in its written September 14, 2016 motion for reciprocal discovery. In support of its motion, the State argued the district court—in the hearing held on November 21, 2016—had ordered Hamilton to produce the raw data and the underlying tests administered to Hamilton by Dr. Barnett as they were presented and any responses that Hamilton provided. Although the State acknowledged Hamilton did not have these materials in his possession and had offered to sign a waiver and release so a subpoena could be issued to Dr. Barnett, the State indicated it was not required to do that because the court ordered Hamilton to produce it at the November 21 2016 hearing.

Hamilton disagreed with the State's interpretation of what had transpired at the November 21, 2016 hearing. Specifically, Hamilton claimed that the district court ordered him to give the State only the responsive discovery that *was in his possession* and that *was required by the reciprocal discovery statute*. Hamilton further claimed that one of the reasons he had requested a trial continuance was to verify he had done so. After

6

further discussion about the statutory scope of required reciprocal disclosure, the district court noted the disagreement and took the matter under advisement to issue a written order.

In a written order filed later that afternoon, the district court recalled the substance of Hamilton's request for continuance at the November 21, 2016 hearing. Specifically, the court recalled finding: (1) Hamilton never lodged a formal objection to the State's discovery requests as served in September 2016 and (2) part of the reason Hamilton requested the trial continuance at the November 21, 2016 hearing was to allow him to produce all of the underlying documentation and information as requested by the State in its original motion. Because no motion concerning discovery was filed by the deadline, the court believed the dispute was resolved. Although the court appeared to acknowledge in its written order that there likely was merit to Hamilton's argument that the State's request for reciprocal discovery exceeded the scope of that permitted by statute, the court declined to address this issue on the merits, finding it would be improper to take up those objections primarily because "Defendant's counsel's indication at the hearing today that [the defendant] stands ready to execute a full release in favor of the State for all of this information . . . [and] [t]he Court is going to hold Defendant to that position." The court ultimately ordered defense counsel to obtain from Dr. Barnett—and then produce to the State—all of the underlying raw data possessed by Dr. Barnett, including copies of all of the actual tests administered to Hamilton by Dr. Barnett as they were presented and copies of any responses that Hamilton provided.

In the weeks that followed, defense counsel moved to set aside the district court's order to produce the underlying raw data and actual tests, to stay the order, and to continue the trial. In addition, the expert himself hired an attorney, who filed an amicus memorandum in opposition to the court's order requiring Hamilton to affirmatively obtain from the expert the underlying raw data for the psychological tests the expert performed and, in turn, provide the data to the State. The expert's attorney expressed Dr. Barnett's

7

concern that such a disclosure might violate a statutory prohibition of that information and subject him to possible disciplinary proceedings or licensing issues. Dr. Barnett suggested that the court modify the order to require a protective order for the materials.

At a status conference on March 6, 2017, the district court and parties addressed Hamilton's motion to set aside the court's order. Defense counsel advised the court he believed he risked violating the court's orders to comply with discovery or violating the Kansas Rules of Professional Conduct by forcing the expert to violate his own licensing requirements. The district court acknowledged that Hamilton's expert raised potentially meritorious ethical concerns about releasing the expert's testing data without a protective order and that the expert discovery statute may not entitle the State to the raw data underlying the expert's report. Nevertheless, the court found Hamilton verbally had agreed at the November 21, 2016 hearing to provide all of the underlying raw data sought by the State, and the court was going to hold Hamilton to that agreement. In response, Hamilton repeatedly claimed the district court was misconstruing the statements he made at the November 21, 2016 hearing. The court was not persuaded and, based solely on the court's perception that defense counsel failed to follow through on a promise to produce the raw data underlying the expert's report, the court held Hamilton would be precluded from introducing the expert report at trial without further permission from the court.

At trial, the defense stated that it intended to prove that Hamilton acted without the ability to form the requisite intent: specifically, that Hamilton blacked out after seeing the officers at the drop-in center and did not come to until the accident. Defense counsel then introduced a proffer of evidence regarding what Dr. Barnett would have said had he been permitted to testify. Dr. Barnett would have testified that he was a clinical psychologist, and that it was his professional opinion that "Hamilton was afflicted with an unspecified dissociative disorder at the time the offenses occurred" and that people with this disorder "can lack the ability to premeditate or to form intent." Dr. Barnett further would have testified that "Hamilton's conduct was consistent with somebody

8

acting under the disease of unspecified dissociative disorder" and that in his professional opinion, Hamilton did not possess the requisite intent to commit any of the charged crimes as a result of mental disease and defect of unspecified dissociative disorder. The defense put on no other evidence. In closing arguments, the defense argued that had Hamilton been able to present his full and complete defense, the evidence would have demonstrated that he lacked the requisite intent to commit felony fleeing and eluding and criminal damage to property. The district court then adjudicated Hamilton guilty of felony fleeing and eluding and of criminal damage to property.

ANALYSIS

Hamilton raises three points of error on appeal: (1) The district court abused its discretion by ordering the defense to provide the State with expert discovery beyond that authorized by statute, (2) the district court abused its discretion by failing to consider the required legal factors before excluding the report and testimony of the defense expert as a sanction for defense counsel's perceived violation of a discovery order, and (3) the district court violated his constitutional right to present a defense by excluding the testimony of his expert as a sanction for defense counsel's perceived failure to comply with representations counsel made concerning discovery. We find each of Hamilton's arguments have merit.

1. *Scope of reciprocal discovery*

The parties agree that we are to review the issue of whether the district court erred in ordering the defense to provide expert discovery beyond that authorized by statute under an abuse of discretion standard. Indeed, district courts have broad discretion in supervising the course and scope of discovery. *Miller v. Johnson*, 295 Kan. 636, 687-88, 289 P.3d 1098 (2012). A court abuses its discretion when its action is

9

"(1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Santos-Vega*, 299 Kan. 11, 23, 321 P.3d 1 (2014).

In support of an abuse of discretion, Hamilton argues the district court's discovery order requiring him to provide expert discovery beyond that authorized by statute was based on an error of fact. Specifically, Hamilton claims substantial competent evidence does not support the court's factual finding that defense counsel agreed to produce documents and information it did not have in its possession and materials beyond that required by the expert discovery statute.

We begin our analysis with the district court's order, which was set forth in a memorandum decision dated February 7, 2017. In that decision, the district court ordered defense counsel to affirmatively obtain from Dr. Barnett—and then produce to the State—all of the underlying data possessed by Dr. Barnett, including copies of all raw data, all of the actual tests administered to Hamilton by Dr. Barnett as they were presented, and all copies of any responses that Hamilton provided. The court cited two reasons for its decision. First, the court found defense counsel voluntarily agreed at the November 21, 2016 hearing to produce expert discovery beyond that authorized by statute and regardless of whether defense counsel had possession of the discovery. Second, the court found defense counsel advised the court at the February 7, 2017 hearing that his client would execute a release in favor of the State for expert discovery beyond that authorized by statute.

10

a. *November 21, 2016 hearing*

The district court found defense counsel voluntarily agreed at the November 21, 2016 hearing to provide all of the information the State requested in its original motion for reciprocal discovery. In support of this factual finding, the court noted defense counsel had requested a continuance of the trial at the November 21, 2016 hearing and had told the court he was in the process of "'gathering information that the State is requesting in its reciprocal discovery motion'" and that a December status deadline would allow him to "'disclose the information that the State's requesting.'"

Although the district court correctly quoted from the transcript from the November 21, 2016 hearing, we are not persuaded substantial competent evidence supports the court's finding that defense counsel voluntarily agreed to provide expert discovery beyond that authorized by statute to the State. As a preliminary matter, we must view the statements in the context of the court's September 30, 2016 order (in a hearing on this precise issue) that the scope of expert discovery was limited to documents and materials *in the possession of the defense*:

> "THE COURT:  Mr. Orosco [defense counsel], I just limited it. I said you're not required to produce something that your expert doesn't already possess or doesn't produce as a result of the examination he's making. So if he doesn't have a list of cases he's testified in, that he's provided to you, you don't have to go out and independently do that."

Providing further context is the status conference held on October 21, 2016, at which defense counsel informed the court that it had produced all of the reciprocal discovery *in its possession*. The statements also must be viewed in conjunction with clarifications made at the November 21, 2016 hearing by defense counsel immediately after the statements identified by the court were made. Specifically, and *after* he allegedly volunteered to produce without limit all information requested by the State even if it went

11

beyond the scope of expert discovery authorized by statute, defense counsel clarified that the discovery he planned to produce would be limited in nature:

"MR. OROSCO: And I guess to clarify that then, because from my understanding the procedures [requested by the State in its discovery] are outlined in Dr. Barnett's psychological evaluation. There was the mental status examination; a clinical interview; Color Trails Test; Wide Range Achievement Test; Revised Reading Subtest; Symptom Checklist-90-R; Hare Psychopathy Checklist Revised, Second Edition; Minnesota Multiphasic Personality Inventory, Second. If the State is asking if there is anything other than that as far as [Hamilton] presenting the facts by the interview itself, or if there is any other medical records or, that he relied on, I can say that the primary care physician medical records, Dr. Chad Johanning, Dr. Sanjeev Kumar is a neurologist . . . or former neurologist, those were made available to Dr. Barnett, and from my understanding I gave a copy of medical records a while back ago, of these, I believe Dr. Chad Johanning and Dr. Sanjeev Kumar to the State so they should already have that, so I guess I—the defense needs clarification as far as what exactly more is the State requesting."

The State did not respond. Instead, the district court informed defense counsel that it appeared the State was requesting "the data and the underlying tests as they were presented and any responses that [Hamilton] gave." The district court also stated that there had been no objection to the scope of the discovery requested. In response to the court's statement, defense counsel reiterated that it did not have in its possession any of the documents the court believed the State was asking for:

"MR. OROSCO: . . . Judge, and from my understanding, the State's discovery request, and I believe we heavily litigate[d] that issue, I did not have any, and I still don't have any information more than what I had at that time, and so—[.]

Notably, the district court did not respond to defense counsel's reference to the issue being heavily litigated, i.e., the court's prior order stating that Hamilton did not need

12

to produce anything that was not in his possession. Nor did the court respond to defense counsel's unambiguous statement that, beyond what already had been produced, the defense did not have in its possession any more documents responsive to the State's request. Instead, the court said the following:

> "THE COURT: Mr. Orosco, I'm not blaming you specifically. I'm just saying if the State said to me, well, we haven't gotten the reports yet from the officers, I would say, well get 'em, and that's sort of the posture you're in here. You need—you have the obligation to, if you want this report to come in, the State's entitled to have an expert review the underlying basis for it all. I am saying on the face of the report it seems to me Dr. Barnett said the things that legally need to be said for me to find that the report itself states a basis under law for me to allow it in. If there is other objections because discovery doesn't occur, that's a separate issue, that—I'm not trying to cast aspersions one way or the other. Discovery is outstanding. It needs to be resolved. Based on that, I would find that the time requested here should be attributed to the defense in terms of speedy trial."

After making this statement, the court then went on to set a new trial date and a January 13, 2017 motions deadline.

It is clear from the statements made by the district court to defense counsel just prior to setting the new trial date that the court understood defense counsel was continuing to object to providing the State with expert discovery beyond that authorized by statute and discovery not in his possession. This understanding is consistent with defense counsel's position from the beginning of the case and with the court's prior order limiting discovery to that which the defendant had in his possession. Moreover, the district court's statement that there had been no objection to the scope of the State's discovery request is contrary to the facts set forth in the record, which reflect that defense counsel filed a formal written objection to the scope of the State's discovery request on September 28, 2016. And it is unreasonable to construe defense counsel's November 30,

13

2016 statement as one agreeing to produce expert discovery beyond that authorized by statute and not in his possession when it is clear from the February 7, 2017 hearing transcript that defense counsel learned for the first time from the court at this hearing that the State was requesting material beyond that authorized by statute and not in his possession.

Based on the district court's September 30, 2016 order limiting the scope of expert discovery to documents and materials in the possession of the defense, defense counsel's clarification (after he allegedly volunteered to provide expert discovery beyond that authorized by statute) that expert information subject to discovery under the statute already had been produced, defense counsel's statement to the court (after he allegedly volunteered to provide expert discovery beyond that authorized by statute) that he already had produced all expert documents in his possession, the court's statement to defense counsel just prior to the close of the hearing (after defense counsel allegedly volunteered to provide expert discovery beyond that authorized by statute), and the fact that defense counsel did not know until February 7, 2017, that the State's discovery request was being construed by the court to go over and above that authorized by the statute, we conclude the district court's factual finding—that the two statements made by defense counsel constitute a voluntary agreement to produce expert discovery beyond that authorized by statute—is not supported by substantial competent evidence.

b. *February 7, 2017 hearing*

The second reason given by the district court to support its decision to order expert discovery beyond that authorized by statute is that defense counsel advised the court at the February 7, 2017 hearing that his client would execute a release in favor of the State for such overbroad discovery. But when we review the transcript from the February 7, 2017 hearing, it is readily apparent that defense counsel was saying that his client was willing to sign a release for the State to communicate directly with Dr. Barnett regarding

14

his evaluation, not that his client was willing to sign a release agreeing to obtain from Dr. Barnett and produce to the State expert discovery beyond that authorized by statute: "if the State wants more information from Dr. Barnett on the basis of his opinion, they—well, Mr. Hamilton's more than happy to sign a release of information for the State to speak with Dr. Barnett to obtain that." After the State said it still wanted the raw data and testing protocols, defense counsel clarified what he was offering:  The State could work with Dr. Barnett to obtain such information, but defense counsel was not going to agree to obtain the information and then provide it to the State.

> "MR. OROSCO:  And, Judge, I believe that information would be great for Dr. Barnett to respond directly to the State. I don't have notes of Dr. Barnett's opinions, and if the State's alluding that Dr. Barnett is leaving out other examinations that's listed, well, I don't understand the basis of that, but that is something that's within Dr. Barnett's knowledge. And I believe that's why the statute specifically says that the defendant would sign the release of information and the State can obtain that information from him. But to commandeer the defense, it's—I don't believe that that would be appropriate on this."

Based on the content of the record, we conclude the district court's factual finding—that defense counsel indicated to the court that his client was willing to sign a release agreeing to obtain from Dr. Barnett and produce to the State expert discovery beyond that authorized by statute—is not supported by substantial competent evidence.

In sum, the factual findings made by the district court to support its legal order to compel production of expert discovery beyond that authorized by statute are not supported by substantial competent evidence in the record; thus, we conclude the district court abused its discretion in compelling the defendant to produce the overly broad expert discovery. And because the court's decision to exclude Dr. Barnett as a witness was based on the defendant's failure to comply with its motion to compel, we similarly find the court abused its discretion in excluding Dr. Barnett as a witness.

15

The next question is whether this abuse of discretion requires reversal. We conclude that it does. Whether the district court's error in basing the exercise of its discretion on a mistake of fact requires reversal is subject to the constitutional harmless error analysis. Under this standard, "'error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record.'" *State v. Gonzalez*, 307 Kan. 575, 589, 412 P.3d 968 (2018). Thus, the State must prove beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the verdict. *State v. Verser*, 299 Kan. 776, 789, 326 P.3d 1046 (2014).

Presumably because defense counsel intended to appeal the district court's decision to preclude the defense expert from testifying, defense counsel made a proffer of Dr. Barnett's testimony. Specifically, counsel proffered that Dr. Barnett would have testified that Hamilton suffered from a dissociative disorder, that he was likely having a dissociative episode at the time of the underlying crimes, and that he likely would not have been able to form the requisite intent to commit the crimes. Notably, the State does not assert facts or present any argument in an attempt to meet its burden to prove beyond a reasonable doubt that there is no possibility that the court's decision to preclude Dr. Barnett from testifying contributed to the verdict. Thus, because the district court abused its discretion in compelling expert discovery beyond that authorized by statute and subsequently excluding the defense's expert because of defense counsel's inability to produce the overly broad expert materials, we reverse Hamilton's convictions and remand his case for a new trial, with directions to compel disclosure of only those expert materials required by K.S.A. 2017 Supp. 22-3212(c) and K.S.A. 22-3219.

2. *Excluding expert witness as discovery sanction*

This court exercises abuse of discretion review over whether the district court appropriately sanctioned a party for violating a discovery order under K.S.A. 2017 Supp.

16

22-3212(i). *State v. Johnson*, 286 Kan. 824, 832, 190 P.3d 207 (2008) (statute granting district court option to impose sanctions it deems "just" grants district court discretion in imposing sanctions). Again, a court abuses its discretion when its action is

> "(1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *Santos-Vega*, 299 Kan. at 23.

Hamilton argues the district court abused its discretion by excluding Hamilton's expert's opinion and testimony as a discovery sanction because when it did so, it failed to consider the factors district courts in Kansas are required to consider when making such a determination. In support of his argument, Hamilton cites *State v. Jones*, 209 Kan. 526, 528-30, 498 P.2d 65 (1972), where the Kansas Supreme Court explained the sanction provision, now K.S.A. 2017 Supp. 22-3212(i), was enacted based on Rule 16 of the Federal Rules of Criminal Procedure, which remains in effect today:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances." K.S.A. 2017 Supp. 22-3212(i).

See Fed. R. Crim. Proc. 16(d)(2).

In interpreting this provision, the Kansas Supreme Court noted that the clear import of this provision was to vest the trial court with wide discretion in dealing with the

17

failure of a party to comply with a discovery order, as federal courts already had held. See *Jones*, 209 Kan. at 528.

Nonetheless, our Supreme Court cited favorably to the comments of the federal rule, which suggest that the district court should "take into account" certain factors in exercising its discretion, namely: (1) why disclosure was not made; (2) the extent of the prejudice, if any, to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant circumstances. See *Jones*, 209 Kan. at 529-30 (citing Federal Advisory Committee's Note on Rule 16, 39 F.R.D. 175, 178 [1966]); see also *State v. Winter*, 238 Kan. 530, 534-35, 712 P.2d 1228 (1986) (reaffirming Kansas reliance on principles annunciated pursuant to federal rules); *State v. Coburn*, 220 Kan. 743, 745, 556 P.2d 376 (1976) (same); *State v. Gaillard-Taylor*, No. 100,668, 2010 WL 1882142, at *4 (Kan. App. 2010) (unpublished opinion).

The *Jones* court also noted that the American Bar Association (ABA) Project On Standards for Criminal Justice had considered the provision and provided principles to guide the exercise of a district court's discretion "which appear cogent and persuasive." *Jones*, 209 Kan. at 529-30. Specifically, it noted that the ABA, in its Standards Relating To Discovery and Procedure Before Trial, Approved Draft (1970), commented that where willful violations of discovery orders were concerned, further discovery orders would likely be superfluous, continuances should be used where necessary, attorneys should be sanctioned in lieu of clients where possible, and finally, that the sanctions should alter the merits of the case as little as possible. *Jones*, 209 Kan. at 529-30.

In the light of the foregoing principles applied by our Supreme Court in *Winter*, *Coburn*, and *Jones*, we now must determine whether the district court in this case abused its discretion by excluding Dr. Barnett's expert's opinion and testimony at trial as a discovery sanction under K.S.A. 2017 Supp. 22-3212(i).

Here, likely as a result of frustration with the delays and its perception of counsel's prior representations, the district court focused its sanction analysis on the delay in the efficiency of the judicial proceeding and the prejudice to the State of not yet having the information, but failed to substantively consider the other enumerated factors: why disclosure was not made; the feasibility of rectifying that prejudice by a continuance; and any other relevant circumstances. See *Jones*, 209 Kan. at 528-30.

a. *Why disclosure was not made*

Although not substantively considered by the district court when imposing its sanction, Hamilton presented the court with many reasons why expert discovery beyond that authorized by statute was not produced to the State. First, the court issued an order in a hearing held on September 30, 2016, that the scope of expert discovery was limited to documents and materials in the possession of the defense, and the defense was not in possession of the data and the underlying tests administered to Hamilton by Dr. Barnett as they were presented and any responses that Hamilton provided to Dr. Barnett.

> "THE COURT: Mr. Orosco, I just limited it. I said you're not required to
> produce something that your expert doesn't already possess or doesn't produce as a result
> of the examination he's making. So if he doesn't have a list of cases he's testified in, that
> he's provided to you, you don't have to go out and independently do that."

Moreover, the expert discovery requested by the State was not permitted by the governing statute, K.S.A. 2017 Supp. 22-3212. This statute limits reciprocal discovery to documents and other material the defense intends to produce at any hearing. In this case, defense counsel repeatedly advised the district court and the State that it did not intend to produce the data and underlying tests and responses at any hearing. The statute also limits reciprocal discovery to that which will not place an unreasonable burden on the defense. In this case, the data and the underlying tests administered to Hamilton by Dr. Barnett and the responses that Hamilton provided to Dr. Barnett are proprietary documents

19

owned solely by Dr. Barnett, who indicated to the court that he could not ethically disclose them to a nonexpert (including defense counsel), particularly in the absence of a court order commanding him to do so. No such order was issued by the district court, nor does the record suggest that the State ever hired an expert to receive the testing protocols or raw data. Thus, even if defense counsel had wanted to comply, he literally could not have done so.

b. *Feasibility of rectifying prejudice to the State*

The district court found that defense counsel's failure to produce expert discovery beyond that authorized by statute as it promised to do caused a delay in the efficiency of the judicial proceeding and prejudice to the State because it did not yet have the information it needed. As set forth in the preceding section, we are not persuaded that defense counsel promised, or even suggested, it would voluntarily produce expert discovery beyond that authorized by statute. But even if he had, imposing the harsh sanction of precluding the defendant's expert report and testimony, which everyone would agree was the crux of Hamilton's defense, was too harsh a sanction, especially given the standard procedure contemplated by Kansas statute for reciprocal expert discovery.

The language in the statute governing defense of lack of mental state expressly contemplates that a defendant who files a notice of intention to assert such a defense will submit to an independent mental examination by a physician or licensed psychologist designated by the court and that, in turn, the defendant will be permitted to secure the services of his own psychiatric expert.

> "(2) A defendant who files a notice of intention to assert the defense that the defendant, as a result of mental disease or defect lacked the mental state required as an element of the offense charged thereby submits and consents to abide by such further orders as the court may make requiring the mental examination of the defendant and

20

designating the place of examination and the physician or licensed psychologist by whom such examination shall be made. No order of the court respecting a mental examination shall preclude the defendant from procuring at such defendant's own expense an examination by a physician or licensed psychologist of such defendant's own choosing." K.S.A. 22-3219(2).

The statute goes on to reference K.S.A. 22-4508, which grants the court discretion, upon defendant's request, to provide funds for the defendant to secure the services of his own psychiatric expert.

"A defendant requesting a mental examination pursuant to K.S.A. 22-4508 and amendments thereto may request a physician or licensed psychologist of such defendant's own choosing. The judge shall inquire as to the estimated cost for such examination and shall appoint the requested physician or licensed psychologist if such physician or licensed psychologist agrees to accept compensation in an amount in accordance with the compensation standards set by the board of supervisors of panels to aid indigent defendants. A report of each mental examination of the defendant shall be filed in the court and copies thereof shall be supplied to the defendant and the prosecuting attorney." K.S.A. 22-3219(2).

Instead of the standard "dueling" experts expressly contemplated by the statute, the district court in this case did not order Hamilton to submit to an independent mental examination by a licensed psychologist. Instead, the court granted the defendant's request to provide funds for the defendant to secure the services of Dr. Barnett, his own psychiatric expert. Defense counsel suggested early on that if the State hired its own expert, his client would submit to an independent mental examination as required by the statute. The State responded that it would be futile to hire its own expert because Dr. Barnett's expert report was insufficient as a matter of law. But hiring its own expert to examine Hamilton would have nothing to do with the sufficiency of Dr. Barnett's report. And, although the district court ultimately denied the State's motion to strike the report as legally insufficient, the State still did not hire its own expert. Even when Dr. Barnett filed

an amicus brief claiming it would be a violation of his professional ethics to turn over the raw data to a nonexpert, the State still did not hire an expert, notwithstanding the fact that independent mental examinations are expressly contemplated by the governing statute.

For the reasons stated above, and assuming for purposes of this section only that defense counsel agreed to voluntarily produce expert discovery beyond that authorized by statute at the November 21, 2016 hearing, we conclude it would have been feasible for the court to have ordered Hamilton to submit to an independent mental examination by an expert chosen by the State. This easily would have rectified any potential prejudice to the State. And the court could have done so early on, when the State first propounded its reciprocal discovery request that clearly went over and beyond the discovery it was permitted to receive by statute. Precluding the defendant's expert report and testimony as a sanction was too harsh a sanction, especially given the standard procedure contemplated by Kansas statute for reciprocal expert discovery.

It also would have been feasible for the district court to have granted Dr. Barnett's request for protective order. On February 16, 2017, counsel for Dr. Barnett filed an amicus memorandum opposing the court's order compelling the disclosure of all raw data and testing protocol. Dr. Barnett's attorney argued that defense counsel could not, and should not, be required to accommodate the district court's discovery order because Dr. Barnett could not disclose the requested protocols without violating the Kansas Administrative Regulations for the Behavioral Science Regulatory Board and committing "unprofessional conduct," for which his license to practice psychology could be suspended or revoked. Specifically, "unprofessional conduct" provides the Board grounds to suspend, limit, condition, revoke, or refuse to renew a psychology license. K.S.A. 2017 Supp. 74-5324(a)(9). And, unprofessional conduct includes "improperly using assessment procedures" by "releasing raw test results or raw data either to persons who are not qualified by virtue of education, training, or supervision to use that information or in a manner that is inappropriate to the needs of the patient or client" or to "allow[], endors[e],

22

or support[]" unqualified individuals "to administer or interpret psychological assessment techniques." K.A.R. 102-1-10a(j)(6), (j)(7).

Counsel for Dr. Barnett suggested that the district court issue a protective order: (1) that made the requisite finding that the data should be turned over to the State but limited disclosure of the data to third parties; (2) condition disclosure to the State on the identification of the psychologist who would receive the data and review Dr. Barnett's conclusions; and (3) would require the certification of the destruction of the data after the case and its appeals concluded. The district court was not persuaded by expert counsel's arguments and reiterated its order that the raw data and underlying protocols be disclosed, again based solely on its perception that defense counsel volunteered to do so.

Finally, it would have been feasible for the State to subpoena Dr. Barnett for deposition to ask him about the data upon which he relied in rendering the opinion in his report. In fact, the State acknowledged Hamilton previously had offered to sign a waiver and release so the State could issue a subpoena to Dr. Barnett, but the State indicated it was not required to do that because the district court ordered Hamilton to produce it at the November 21, 2016 hearing, after defense counsel allegedly volunteered to do so.

c. *Other relevant circumstances*

As far as other relevant circumstances, it appears the district court did not consider the fact that the sanctions were imposed based on what it perceived to be defense counsel's violation of a discovery order but that the sanctions punished Hamilton, not counsel, by completely precluding Hamilton from presenting his theory of defense. At no point in its rulings did the district court consider how excluding this witness would impact Hamilton's rights, nor did it appear to weigh that right against any alleged prejudice to the State and the court's goal of efficiency.

23

In the light of the district court's failure to consider the principles enunciated by our Supreme Court in *Winter*, *Coburn*, and *Jones*, as part of its decision to impose sanctions, we find the district court abused its discretion by excluding Dr. Barnett's expert's opinion and testimony at trial as a discovery sanction under K.S.A. 2017 Supp. 22-3212(i). This is especially so in light of the other principles articulated in *Jones*: continuances should be used when feasible, attorneys should be punished (rather than their clients) when feasible, and discovery sanctions should have as little effect on the merits of a case as possible. 209 Kan. at 529-30.

For the reasons stated in the previous section, we find the district court's abuse of discretion requires the reversal of Hamilton's convictions and therefore must remand his case for a new trial.

3. *Constitutional right to present a theory of defense*

This court exercises unlimited review over whether the district court's decision to exclude evidence infringed upon a defendant's constitutional right to present his or her theory of defense. *State v. Bridges*, 297 Kan. 989, 996, 306 P.3d 244 (2013).

As the United States Supreme Court has explained, "few rights are more fundamental than that of the accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 [1973]). This is because the right to present defense witnesses is an essential attribute of our adversary system in that "[t]he ends of criminal justice would be defeated if the judgments were to be founded on a partial or speculative presentation of the facts." *United States v. Nixon*, 418 U.S. 683, 709, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). The Sixth Amendment right to offer the testimony of witnesses, and to compel their attendance, if necessary, is likewise a fundamental element of due process of law. *Taylor*, 484 U.S. at 409; *Washington v.*

24

*Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). As a result, the imposition of a discovery sanction that entirely excludes the testimony of a material defense witness may violate these constitutional rights. *Taylor*, 484 U.S. at 409.

Similarly, the Kansas Supreme Court has recognized that under the state and federal Constitutions, a defendant is entitled to present the theory of his defense. *State v. Evans*, 275 Kan. 95, 102, 62 P.3d 220 (2003). Thus, "the exclusion of evidence that forms an integral part of the defendant's theory of the case violates the defendant's right to a fair trial." *State v. Ganoa*, 293 Kan. 930, 953, 270 P.3d 1165 (2012).

Nonetheless, a defendant's right to present his or her theory of defense or witnesses in support of that theory is not unlimited but rather is subject to reasonable restrictions. See *Taylor*, 484 U.S. at 410; *Chambers*, 410 U.S. at 295; *State v. Valdez*, 266 Kan. 774, 799, 977 P.2d 242 (1999), *abrogated on other grounds by State v. James*, 276 Kan. 737, 79 P.3d 169 (2003). As such, a defendant's interest in presenting his or her defense may "bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295; *Valdez*, 266 Kan. at 799.

Because discovery rules and sanctions exist for the purpose of effectuating the ends of criminal justice, and to minimize the risk that a judgment will be predicated on incomplete, misleading, or deliberately fabricated testimony, a defendant's right to present a witness may be reasonably curtailed in light of discovery rules. *Taylor*, 484 U.S. at 410. And the United States Supreme Court has held this to mean that excluding evidence as a sanction for an attorney's violation of a discovery order may be justified in certain circumstances, and even preferable for the protection of the adversarial process. *Taylor*, 484 U.S. at 413.

Nonetheless, when determining the appropriate sanction for a criminal defendant's attorney's discovery violation, the United States Supreme Court emphasizes that the

25

district court "may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor." *Taylor*, 484 U.S. at 414. Rather, it must weigh that fundamental right against other considerations, for instance: (1) the presentation of reliable evidence and the rejection of unreliable evidence; (2) the interest in the fair and efficient administration of justice; and (3) the prejudice to the truth-determining function of the trial. If a party's failure to comply with a discovery order was "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence" then exclusion of the evidence can be constitutionally proper. *Taylor*, 484 U.S. at 414-15.

In *Taylor*, a majority of the United States Supreme Court held that excluding a defense witness' testimony was proper where the district court had concluded that defense counsel's violation of the discovery order was willful, blatant, and designed to secure the defense a tactical advantage. 484 U.S. at 416-17. Specifically, because Taylor's attorney had interviewed a witness a week before trial and had amended his witness list on the day of trial to include two other witnesses but not the witness at issue, the Court held that "the inference that [defense counsel] was seeking a tactical advantage [by not disclosing the existence of the witness earlier as required by a discovery order was] inescapable." 484 U.S. at 417. Thus, it concluded that even though less harsh sanctions existed, it was proper to exclude the witness' testimony in this case because it was "plain that the case fit[] into the category of willful misconduct in which the severest sanction is appropriate." 484 U.S. at 417.

This case is not like *Taylor*. Here, while defense counsel may have misspoken, or miscommunicated, or even represented his intent to disclose evidence he did not have the power to disclose, his ultimate failure to disclose it did not result from willful misconduct. Rather, here, defense counsel could not disclose the raw data and underlying testing protocols the district court ordered him to disclose because: (1) he did not have them in his possession and (2) he could not get them without violating the rules of

26

professional conduct by soliciting evidence in violation the administrative regulations governing his expert's ethics. See K.A.R. 102-1-10a(j)(6), (j)(7); Kansas Rules of Professional Conduct Rule 4.4(a) (2019 Kan. S. Ct. R. 363).

And there is no evidence in the record to establish that defense counsel willfully refused to comply with the district court's order to compel the discovery in order to gain a tactical advantage. Indeed, there was no advantage to be had—the district court excluded Hamilton's expert because of defense counsel's failure to comply with the order—and at no point did defense counsel attempt to surprise the State with the discovery. Defense counsel and counsel for Dr. Barnett even proposed alternate ways to get the State the information it would need for effective cross-examination:  for example, to deliver it to an expert appointed by the State or to permit the State's expert to evaluate Hamilton using the same or different instrumentalities.

Simply put, there is no evidence to suggest that defense counsel was attempting to manipulate the discovery procedure for a tactical advantage. In fact, even the district court did not believe that defense counsel intentionally had agreed to disclose undiscoverable material for any nefarious reason:

> "So, and I get how the world turns. I'm not saying Mr. Orosco intentionally did anything. I am saying I can only rely on what I hear in the courtroom. My impression when we left here on November 21st is these issues were resolved, and here we are five months later facing a continuance request."

The exclusion of Hamilton's entire defense in this case was unduly harsh. This is especially true in light of the other factors the United States Supreme Court suggested should be balanced by a district court determining whether evidence exclusion is the appropriate sanction for a defense attorney's failure to comply with a discovery order:  (1) the defendant's fundamental right to present a defense and call witnesses in his or her

27

defense, (2) the court's interest in presenting reliable evidence and rejecting unreliable evidence, (3) the interest in the fair and efficient administration of justice, and (4) the prejudice to the truth-determining function. See *Taylor*, 484 U.S. at 414-15.

First, excluding Dr. Barnett's testimony and report completely abrogated Hamilton's right to present his mental disease or defect defense. Dr. Barnett was the only witness he intended to call, and indeed, was the sole person who could testify whether someone with his type of dissociative disorder, acting in a dissociative state, could form the requisite intent to commit the charged crimes. Hamilton had no memory of the events. Because he could not remember, he could not testify about what he intended or did not intend while committing the charged crimes. So, by precluding Dr. Barnett from testifying, Hamilton's fundamental right was nearly completely abridged. Thus, Hamilton's right to present a defense weighs against excluding his expert's testimony.

Second, while the district court has an interest in admitting reliable evidence and excluding unreliable evidence, this could have occurred without excluding Dr. Barnett's testimony. As an initial matter, the State never moved to declare the methodology unreliable after receiving the report of Dr. Barnett's testing. Moreover, psychologists frequently opine on whether an accused did or did not have the capacity to form a mens rea; in fact, K.S.A. 22-3219(2) acknowledges that fact and requires that the accused submit to court-ordered mental examinations and requires the accused to file copies of any expert reports obtained by the defendant on the same issue. Thus, there is no inherent reason to doubt the reliability of Dr. Barnett's opinion.

That said, the State has an interest in being able to thoroughly cross-examine the expert and to proffer a contrary opinion. Nonetheless, this could have been done by hiring an expert for the State to receive the testing protocols from the defense expert or by requiring Hamilton to submit to an examination by the State's expert or any combination thereof. Because the district court could protect the reliability of the evidence that would

28

come in at Hamilton's trial without excluding Dr. Barnett's evidence in its entirety, this factor also weighs against excluding the evidence.

The third factor also weighs slightly in favor of not excluding the evidence. Allowing Dr. Barnett to testify would have required a further delay in the case, which had already been ongoing for approximately two years. The State repeatedly objected to the defense continuances, and a further defense continuance would have impacted the court's interest in the "efficient administration of justice." Still, the impact likely would have been minimal, as the State requested two further continuances after objecting to this defense request, and the court granted one additional continuance to the defense.

Furthermore, this factor also speaks towards the "fair" administration of justice, and while it was unfair to the State to keep pushing back trial because of discovery issues caused by the defense, it was even more unfair to prevent the defendant from presenting his sole defense. Thus, despite the fact an additional continuance would have prejudiced efficiency—the State likewise needed additional time—the unfairness to Hamilton in excluding the evidence was much more extreme.

Finally, the fourth factor the United States Supreme Court mentioned—the prejudice to the truth determining function of excluding the evidence—again weighs against excluding Dr. Barnett's testimony. If the purpose of the criminal justice system is to get to the truth, how can that be accomplished when a defendant is prevented from presenting the defense that—due a diagnosed mental disease or defect—he lacked the ability to form the requisite criminal intent? The district court in this case refused to consider evidence that, despite the fact Hamilton obviously committed the charged crimes on video, he nonetheless may not have been criminally culpable as a result of his dissociative mental illness. Because the truth seeking function was impaired by the defense's inability to present the mental disease or defect defense, the prejudice to the

29

truth determining function caused by the exclusion of the evidence was severe. Thus, the fourth factor also weighs against excluding the evidence.

Thus, under the principles announced in *Taylor*, the district court erred by excluding Dr. Barnett from testifying as a sanction for defense counsel's perceived violation of a discovery order or perceived representations about discovery.

For all of the reasons stated above, we find the district court abused its discretion in compelling defense counsel to produce expert discovery beyond that authorized by statute and subsequently excluding the defense's expert because of defense counsel's inability to produce those expert materials. As a result, we reverse Hamilton's convictions and remand his case for a new trial, with directions to compel disclosure of only those expert materials required by K.S.A. 2017 Supp. 22-3212(c) and K.S.A. 22-3219.

Reversed and remanded with directions.